**Marion L. HENRY, Plaintiff,**

v.

**James SCHLESINGER et al., Defendants.**

**Civ. A. No. 74–3017.**

United States District Court, E. D. Pennsylvania.

Jan. 7, 1976.

Donald L. Weinberg, Philadelphia, Pa., for plaintiff.

Kenneth A. Ritchie, Asst. U. S. Atty., Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

CLIFFORD SCOTT GREEN, District Judge.

Pending before this Court is defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) or, in the alternative, for summary judgment pursuant to Rule 56(c). For the reasons stated hereinafter, we deny defendants' motion as to Count I of the complaint, which alleges a violation of 42 U.S.C. § 1981, and Count III of the complaint, which alleges a violation of 42 U.S.C. § 2000e–16, and grant defendants' motion to dismiss as to Count II of the complaint, which is based on an alleged violation of 42 U.S.C. § 1983.

Plaintiff is a Black female who resides in Philadelphia, is employed at the Defense Personnel Support Center ("Center") located in Philadelphia, and has been so employed since 1956. The Center is a subdivision of the Defense Supply Agency ("Agency"), an agency within the Department of Defense.

Plaintiff names as defendants (former) Secretary of Defense, James R. Schlesinger, the Commanding Officer of the Center, Rear Admiral C. Bruce Smith, the Center, and the Agency. She alleges that the Center and the Agency have engaged in and continue to engage in acts and practices which unlawfully discriminate against her because of her race and sex in violation of 42 U.S.C. §§ 1981, 1983, and 2000e–16. She seeks to enjoin defendants from engaging in these acts and practices plus recover compensatory damages for injuries allegedly sustained as a consequence there-

of. Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(4).

Plaintiff alleges the following facts in her complaint, which we accept as true for the purpose of deciding the motion to dismiss. From 1956, plaintiff has been in defendants' employ progressing from Grade Level WB–3 to her present classification, obtained in April, 1969, of clothing inspector Grade Level WB–9. Until 1969, clothing inspectors advanced to the WB–15 Grade Level and prior to 1969, WB–15 clothing inspectors were predominantly white and male. In 1969, WB–15 clothing inspectors were reclassified to WB–11, with no loss of pay or benefits, and a new clothing inspector Grade Level, WB–9, was created at pay and benefit levels below those of the new WB–11 Grade Level. Plaintiff contends that at the time of creation of the WB–9 clothing inspector Grade Level to the present, no substantial differences have existed between WB–11 and WB–9 in terms of the job summaries, descriptions and duties; and while classified as a WB–9 clothing inspector, plaintiff performs duties and responsibilities "identical to those of white, male co-workers classified as WB–11 clothing inspectors". Based upon her employment history, plaintiff claims she should have been classified at the WB–11 Grade Level since at least April 1969. Plaintiff further alleges that Black and female employees comprise, and at all relevant times have comprised, the majority of the WB–9 clothing inspectors at the Center. The majority of all WB–11's at all times have been white. The complaint recites that plaintiff initially complained of the classification system in July, 1973 and that notice of final action by the Agency rejecting her complaint was communicated to her by letter dated October 31, 1974, received by plaintiff on November 2, 1974. The instant action was filed on November 22, 1974.

Count I of plaintiff's complaint alleges that the defendants' classification practices have been and are racially discriminatory against her in violation of 42 U.S.C. § 1981. Count II alleges that defendants' classification practices have been and are discriminatory against plaintiff on the basis of race and sex in violation of 42 U.S.C. § 1983. Finally, Count III alleges that defendants' classification practices have been and are discriminatory against plaintiff on the basis of race and sex in violation of 42 U.S.C. § 2000e–16.

Defendants' motion to dismiss or in the alternative for summary judgment raises a number of issues with respect to the procedural aspects of a cause of action against the federal government for unlawful employment practices. We consider these issues seriatim.

## I.

■ The first issue raised by defendants is whether or not Count II of plaintiff's complaint states a cause of action under 42 U.S.C. § 1983.[1] Clearly, state action is an element of a cause of action thereunder.[2] As plaintiff fails to allege state action in Count II of her complaint, we must grant defendants' motion to dismiss as to Count II of plaintiff's complaint. *Braden v. University of Pittsburgh,* 477 F.2d 1 (3rd Cir. 1973); *Adams v. Southern California First National Bank,* 492 F.2d 324 (9th Cir. 1973).

## II.

■ The next issue raised by defendants is whether or not Section 717 of the Equal Employment Opportunity Act of 1972 [3] encompasses prepassage claims? Defendants have apparently viewed

---

1. We note that plaintiff does not respond to this issue in either of her memoranda in opposition to defendants' motion.

2. See note 28 *infra.*

3. Section 717 of the Equal Employment Opportunity Act of 1972, Pub.L.No. 92–261, 86 Stat.

111, 42 U.S.C. § 2000e–16 amended Title VII of the Civil Rights Act of 1964, Pub.L. No. 88–352, 78 Stat. 255, 42 U.S.C. § 2000e *et seq.* For a more detailed discussion, see D.A. Bell, Race Racism and American Law, 746–813 (1973).

plaintiff's Title VII cause of action as encompassing claims which predate the effective date of Section 717, March 24, 1972. However, in plaintiff's supplemental memorandum in opposition to defendants' motion to dismiss, plaintiff expressly limits her Title VII cause of action to those claims occurring after the effective date of Section 717; plaintiff concedes that claims predating the effective date of Section 717 and not pending in an administrative proceeding thereon, "cannot be attacked under Title VII."[4] Plaintiff's Suppl. Memo. at p. 2.

We must decide, then, whether or not plaintiff states a cause of action under Section 717 with respect to those claims occurring subsequent to the effective date of that statute, in view of the fact that the classification system which allegedly discriminates against plaintiff was adopted prior to the effective date of the statute. Plaintiff contends, and we agree, that defendants' adherence to an alleged discriminatory classification system since the effective date of Section 717 is actionable under title VII. The fact that the alleged discriminatory classification system became operative in 1969 does not bar plaintiff from seeking relief from its present injurious effects.

See, Dudley v. Textron, Inc., Burkart-Randall Division, 386 F.Supp. 602 (E.D. Pa.1975); Commonwealth v. Glickman, 370 F.Supp. 724 (W.D.Pa.1974). See also, Belt v. Johnson Motor Lines, Inc., 458 F.2d 443 (5th Cir. 1972); Henderson v. First National Bank of Montgomery, 344 F.Supp. 1373 (M.D.Ala.1972); King v. Georgia Power Co., 295 F.Supp. 943 (N.D.Ga.1968). Cf. Ettinger, supra, 518 F.2d at 652, 653.

### III.

The next issue presented, which again refers to Count III of the complaint, is whether or not plaintiff has exhausted her administrative remedies under Title VII?

Defendants argue that plaintiff never filed a formal complaint of discrimination with the Agency or Center as to her grade 9 classification, because the July, 1973 complaint was an oral presentation made by another employee on behalf of plaintiff to the Agency's EEO counselor and not a complaint within the meaning of 5 C.F.R. 713.214(a)(1).[5] Thus, it is argued, plaintiff failed to follow the applicable regulation requiring a timely written complaint.

**4.** However, we must point out that while it was held in *Sperling v. United States*, 515 F.2d 465 (3rd Cir. 1975) that Section 717(c), 42 U.S.C. § 2000e–16(c) applied retroactively to actions where an administrative claim was pending at the time of the statute's enactment (*see also, Brown v. General Servs. Admin.*, 507 F.2d 1300 (2nd Cir. 1974), *cert. granted,* 421 U.S. 987, 95 S.Ct. 1989, 44 L.Ed.2d 476 (1975); *Koger v. Ball*, 497 F.2d 702 (4th Cir. 1974); *Womack v. Lynn*, 164 U.S.App.D.C. 198, 504 F.2d 267 (1974). *Cf. Ettinger, et al. v. Johnson, et al.*, 518 F.2d 648 (3rd Cir., Filed June 18, 1975)) the rationale of *Sperling* causes us to disagree with defendants' contention, to which plaintiff apparently concedes, that claims antedating the effective date of Section 717 are forever lost as to relief thereunder. The rationale to which *Sperling* subscribed in reaching this holding is that the substantive right to be free of discrimination antedated the statute, which was merely "procedural and remedial in nature." *Sperling, supra,* at 473. The Third Circuit has stated: "This rationale suggests that § 2000e–16(c) would apply as well where discriminatory conduct giving rise

to a cause of action antedated March 24, 1972, but no relief, either administrative or judicial, was sought until after that time." *Ettinger, supra,* 518 F.2d at 651, n.7a *citing* 504 F.2d at 629, n.6.

**5.** "(a) Time limits. (1) An agency shall require that a complaint be submitted in writing by the complainant or his representative and be signed by the complainant. . . . The agency may accept the complaint for processing in accordance with this subpart only if—

"(i) The complainant brought to the attention of the Equal Opportunity Counselor the matter causing him to believe he had been discriminated against within 30 calendar days of the date of that matter, or, if a personal action, within 30 calendar days of its effective date; and

"(ii) the Complainant or his representative submitted his written complaint to an appropriate official within 15 calendar days of the date of his final interview with the Equal Employment Opportunity Counselor."

A federal employee is under no duty to appeal an agency's final action or decision to the Civil Service Commission. *See,* 42 U.S.C. § 2000e–16(c); *Ettinger, supra,* 518 F.2d at 651–652 *citing Sperling, supra.* Therefore, said employee runs afoul of the exhaustion doctrine [6] only if he failed either to bring his complaint to the attention of the EEO counselor within the time limits prescribed by 5 C.F.R. § 713.214(a)(1)(i), or to timely raise in the administrative process the issues set forth in his complaint filed in accordance with 5 C.F.R. 713.214(a)(1)(ii). *See, Ettinger, supra,* 518 F.2d at 651–653. If the record does not contain sufficient facts relevant to deciding either feature of the exhaustion issue, the district court must hold a hearing *de novo* on the issue; and at the hearing the court, in determining whether the time limitations have been satisfied, may consider such factors as allegations that the discrimination was continuous in nature. 518 F.2d at 652–653. If, however, the court finds that plaintiff did not resort to the EEO counselor within 30 days after the alleged discriminatory episode, "it should proceed to decide whether this failure to exhaust can be excused on any ground," such as plaintiff's ignorance of the applicable limitation periods. *Id.,* at 518 F.2d at 652. *See also, McKart v. United States,* 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). Against this background, we consider the exhaustion issue raised by defendants in conjunction with the administrative record before us.

The administrative record shows that in July, 1973 Mr. Clarence Cooper met on behalf of plaintiff with Mr. Samuel Mosely, an EEO counselor, concerning the complaints of plaintiff and others.[7] On August 21, 1973, an EEO counselor notified Mr. Cooper of the results of a "final counseling interview" and that he had "the right to file a COMPLAINT OF DISCRIMINATION WITHIN 15 CALENDAR DAYS AFTER RECEIPT OF THIS NOTICE".[8] Plaintiff did not file a formal complaint but rather sent a letter to the then Secretary of Defense, Elliot Richardson, on August 20, 1973 complaining of the EEO counselor's findings and the manner in which the investigation had been conducted up to that point.[9] In response to plaintiff's letter, the Deputy Assistant Secretary of Defense sent a memorandum to the Director of the Agency instructing him to

> . . . inquire into . . . [plaintiff's] complaint and resolve problems indicated by such inquiry. Please communicate directly with the complainants and provide a copy of the results to this office for my review.[10]

The Director for Equal Opportunity, Office of the Assistant Secretary of Defense, expressly informed plaintiff that the Secretary of Defense

> . . . has asked the Defense Support Agency to inquire fully into the matters included in your complaint. The Defense Supply Agency will respond directly to you and provide me with a copy for our review.[11]

In addition, although aware that plaintiff's complaint had not been initiated in accordance with formal agency proce-

---

**6.** The doctrine of exhaustion provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938). *See also, McKart v. United States,* 395 U.S. 185, 193, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); 3 K. Davis, Administrative Law Treatise § 20.01 et seq. (1958 ed., 1965 Supp.). The Supreme Court has stated that the doctrine of exhaustion is "subject to numerous exceptions". *McKart v. United States,* 395 U.S. 185, 193, 89 S.Ct. 1657, 23 L.Ed.2d 194

(1969); *Love v. Pullman,* 404 U.S. 522, 523, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972).

**7.** Admin. Rec., Items 10 and 11.

**8.** *Id.,* at Item 12. *See also* 5 C.F.R. § 713.-214(a)(1)(ii).

**9.** Admin. Rec. Item 13. We note that the letter was actually dated one day prior to the August 21, 1973 "final counseling interview" notice.

**10.** *Id.,* at Item 15. *See also, Id.,* at Item 17.

**11.** *Id.,* at Item 15.

dures, the EEO officer, Mr. McDonald, informed plaintiff that

> [t]his office is currently reviewing your alleged allegations [sic] as indicated in your letter to Mr. Richardson. Upon completion of my review, a report will be forthcoming . . . .
> This office has and will continue to manage the EEO Program as set forth by the guidelines and regulations of Headquarters, DSC [Defense Supply Agency] and the U.S. Civil Service Commission. . . .[12].

It is clear that plaintiff has not violated the Civil Service Regulations. The very first sentence of 5 C.F.R. 713.-221(a)(1)(i) states that "[a]n *agency* shall require that a complaint be submitted in writing by the complainant . . ." (emphasis added). Secretary Richardson's directive to the Agency that it inquire fully into plaintiff's charges can only be viewed as an acceptance of plaintiff's written complaint even though not presented in the form apparently desired by the Agency. Thus, if there has been a breach of the Civil Service Regulations, it was committed by the Agency, at the direction of the Secretary, and not plaintiff.[13]

We now turn to defendants' position that plaintiff may not maintain the instant action because she allegedly failed to obtain notice of final action by the Agency prior to initiating the instant action. Specifically, defendants contend that the October 31, 1972 letter from Mr. McDonald to plaintiff is inoperative as a final agency decision, because Mr. McDonald was not one of the persons authorized to issue notice of final agency action.

Within the context of the factual pattern before us, it must be concluded that the McDonald letter advising plaintiff of appeal rights to the Civil Service Commission constituted notice of final agency action within the meaning of Section 717(c).[14] The administrative record clearly shows that the EEO officer misled plaintiff and that the Agency did nothing to dispel plaintiff's belief that no further notice of final agency action would be forthcoming.[15] Ignorance on the part of the uninitiated is a factor to consider in deciding whether such person has failed to exhaust administrative remedies. *See Ettinger, supra,* 518 F.2d at 651–652. *Cf. McGarvey v. Merck and Co., Inc.,* 493 F.2d 1401 (3rd Cir., Opinion Filed on March 12, 1974); *Goger v. H. K. Porter Company, Inc.,* 492 F.2d 13 (3rd Cir. 1974).

Even if we did not find that the McDonald letter constituted notice of final agency action, plaintiff could still maintain the instant action. For, it is sufficient to point out that "[s]ection 717(c) provides that if a discrimination charge is filed with the employing agen-

---

12. *Id.,* at Item 16.

13. What has been said in regard to standing and election of remedies is equally applicable to matters of form, and bears repeating: "[T]he national public policy reflected both in Title VII of the Civil Rights Act of 1964 and in § 1981 may not be frustrated by the development of overly technical judicial doctrines." *Hackett v. McGuire Brothers, Inc.,* 445 F.2d 442 (3rd Cir. 1971).

14. Section 717(c), 42 U.S.C. § 2000e–16(c) reads:

> "(c) Within thirty days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a) of this section, or by the Civil Service Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, Executive Order 11478 or any succeeding Executive orders, or after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit or with the Civil Service Commission on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e–5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant."

15. Admin. Rec., Items 22, 24, and 25.

cy by a federal employee, and the agency has not made a final disposition of the complaint within 180 days, the employee may then file suit in the district court." *Sperling, supra,* at 475.[16]   Plaintiff filed the instant action some 16 months after the filing of her initial charge with the Agency; and, if, as defendants contend, there was no final agency action as of the date of the filing of the instant action, plaintiff may still maintain this action under the aforesaid provision.   Accordingly, we deny defendants' motion to dismiss Count III of the complaint.

### IV.

Defendants argue next that plaintiff may not proceed under Count I of the complaint, which alleges a cause of action under 42 U.S.C. § 1981, because (1) a § 1981 cause of action is barred by the doctrine of sovereign immunity, and if not, (2) federal employees must exhaust available administrative remedies under § 1981, which plaintiff has failed to do.

Defendants' contention initially raises the two-fold issue of (a) whether or not

§ 1981[17] applies to the United States, its agencies or personnel, and, if so, (b) whether or not there exists an express statutory waiver of sovereign immunity for suits brought thereunder against the United States, its agencies, or personnel?[18]   This issue is presented as an issue of first impression in this Circuit, at least as far as reported decisions reveal.[19]

We believe that the pertinent Supreme Court decisions and legislative history leave no doubt as to how we must decide this issue; a § 1981 cause of action brought pursuant to 28 U.S.C. § 1343(4) is a cause of action authorized by law to be commenced against agencies or personnel of the United States and is not barred by the doctrine of sovereign immunity.

*A.   Applicability of § 1981 to the Agencies or Personnel of the United States.*

The Supreme Court has stated in dictum that § 1982, a provision related to § 1981,[20] is directed toward "govern-

---

**16.**  This particular feature of § 2000e–16(c) and the reasoning behind it is illuminated in Judge Gibbon's analysis of the legislative history to the 1972 Amendment to Title VII.   *See Sperling, supra,* at 469–485.

**17.**  § 1981 reads:

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

**18.**  It is well settled that the United States as a sovereign power enjoys immunity from suit and from costs incident thereto except where Congress has otherwise provided.   *United States v. Worley,* 281 U.S. 339, 50 S.Ct. 291, 74 L.Ed. 887 (1930); *United States v. Chemical Foundation,* 272 U.S. 1, 47 S.Ct. 1, 71 L.Ed. 131 (1926).   *Compare, Keifer & Keifer v. Reconstruction Finance Corp.,* 306 U.S. 381, 388, 59 S.Ct. 516, 517, 83 L.Ed. 784 (1939); *Principality of Monaco v. Mississippi,* 292 U.S. 313, 321, 54 S.Ct. 745, 747, 78 L.Ed. 1282 (1934).

**19.**  The doctrine of sovereign immunity in the context of federal unlawful employment prac-

tices has been discussed, albeit not at length, in this Circuit before.   *See, Sperling, supra* (discussed below).   *Ficklin v. Sabatini,* 378 F.Supp. 19 (E.D.Pa.1974) comes closest to holding that there is an express waiver of sovereign immunity for § 1981, although the court did not explicitly discuss the issue of sovereign immunity.

**20.**  The operative language of both § 1981 and § 1982 is traceable to the Act of April 9, 1866, c. 31, § 1, 14 Stat. 27.   *Hurd v. Hodge,* 334 U.S. 24, 30–31 n. 7, 68 S.Ct. 847, 850–851, 92 L.Ed. 1187 (1948).   The Act of Apr. 9, 1866, § 1, read in part:

That all persons born in the United States . . . of every race and color . . . shall have the same right, in every State and Territory in the United States, to make and enforce contracts, to sue, be parties, and give evidence, to inherit, purchase, lease, sell, hold, and convey real and personal property, and to full and equal benefit of all laws and proceedings for the security of person and property, as is enjoyed by white citizens, and shall be subject to like punishment, pains, and penalties, and to none other, any law, statute, ordinance, regulation, or custom, to the contrary notwithstanding.   14 Stat. 27.

The 1866 Act rested only on the Thirteenth Amendment, *United States v. Harris,* 106 U.S.

mental action". *Hurd v. Hodge*, 334 U.S. 24, 31, 68 S.Ct. 847, 92 L.Ed. 1187 (1948).[21] However, relying heavily upon Congressional intent as enunciated in the legislative history to Section 1 of the Civil Rights Act of 1866, of which § 1982 and 1981 were a part,[22] the Supreme Court later, in *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 426, 88 S.Ct. 2186, 2196, 20 L.Ed.2d 1189 (1968), squarely stated that:

> Hence the structure of the 1866 Act, as well as its language, points to the conclusion urged by the petitioners in this case—that § 1 was meant to prohibit *all* racially motivated deprivations of the rights enumerated in the statute, although only those deprivations perpetuated 'under color of law' were to be criminally punishable under § 2.

In *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1717, 1725, 44 L.Ed.2d 295 (1975), Justice Marshall in a concurring opinion joined by Justices Douglas and Brennan cites the majority opinions in *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Sullivan v. Little Huting Park, Inc.*, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969), for the proposition that:

> "Congress intended to prevent private discriminatory deprivations of all the rights enumerated in Section 1 of the 1866 Act, including the right to contract. . . . The Court's recognition of a proscription in § 1981 against

private acts of employment discrimination . . . reaffirms that the early civil rights acts reflects congressional intent to '*speak to all deprivations . . . whatever their source.*'" (emphasis added)

And, most significant, in distinguishing *Hurd*, *supra*,[23] a unanimous Court in *District of Columbia v. Carter*, 409 U.S. 418, 422–423, 93 S.Ct. 602, 605, 34 L.Ed.2d 613 (1973) stated:

> Moreover, like the Amendment upon which it is based, § 1982 is not a "mere prohibition of state laws establishing or upholding" racial discrimination in the sale or rental of property but, rather, an "absolute" bar to *all* such discrimination, private as well as *public, federal* as well as *state. Cf. Jones v. Alfred H. Mayer Co.*, supra [392 U.S.], at 413, 437 [88 S.Ct. 2186 at 2189, 2202]. With this in mind, it would be anomalous indeed if Congress chose to carve out the District of Columbia as the sole exception to an act of otherwise universal application. And this is all the more true where, as here, the legislative purposes underlying § 1982 support its applicability in the District. The dangers of private discrimination, for example, that provided a focal point of Congress' concern in enacting the legislation, were, and are, as present in the District of Columbia as in the States, and the same considerations that led Congress to extend the prohibitions of § 1982 to the Federal Government apply with

---

629, 640, 1 S.Ct. 601, 610, 27 L.Ed. 290 (1883); Civil Rights Cases, 109 U.S. 3, 22, 3 S.Ct. 18, 29, 27 L.Ed. 835 (1883); *United States v. Morris*, 125 F. 322, 323 (E.D.Ark.1903), and was enacted before the Fourteenth Amendment was formally proposed. *United States v. Price*, 383 U.S. 787, 804, 86 S.Ct. 1152, 1162, 16 L.Ed.2d 267 (1966); *Hurd v. Hodge*, 334 U.S. 24, 32 n. 11, 68 S.Ct. 847, 92 L.Ed. 1187 (1948); *Oyama v. California*, 332 U.S. 633, 640, 68 S.Ct. 269, 272–273, 92 L.Ed. 249 (1948); Civil Rights Cases, *supra*, 109 U.S. at 22, 3 S.Ct., at 29. The 1866 Act was re-enacted in 1870, and the predecessor of the present § 1981 was to be "enforced according to the provisions" of the 1866 Act. Act of May 31,

1870, § 18, 16 Stat. 144. In contrast, the 1871 Act was passed pursuant to the Fourteenth Amendment and changes in wording may have reflected the language of the Fourteenth Amendment. *See, United States v. Wong Kim Ark*, 169 U.S. 649, 695–696, 18 S.Ct. 456, 474–475, 42 L.Ed. 890 (1898).

**21.** The *ratio decidendi* of *Hurd* went to the application of *Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948) to the District of Columbia and was later distinguished in *District of Columbia v. Carter, infra.*

**22.** See note 20 *supra*.

**23.** See note 21 *supra*.

equal force to the District, which is a mere instrumentality of that Government. Thus, in the absence of some express indication of legislative intent to the contrary, there was ample justification for the holding in *Hurd* that § 1982 was intended to outlaw racial discrimination in the sale or rental of property in the District of Columbia as well as elsewhere in the United States. (emphasis added)

The crucial factor in the Supreme Court's repeated determination that §§ 1981 and 1982 individually constitute statutes of universal applicability, and on which we necessarily base our ruling that § 1981 applies to the alleged acts of the defendants, is the legislative history surrounding § 1 of the 1866 Act.[24] Unlike the 1871 Act, which was passed as a means to enforce the provisions of the Fourteenth Amendment,[25] the 1866 Act, enacted before the Fourteenth Amendment was formally proposed,[26] was passed as a means to enforce the Thirteenth Amendment.[27] Since the Thirteenth Amendment acts as a prohibition against all incidents of slavery regardless of their source, the instrument through which Congress sought to effectuate the Amendment must necessarily apply universally:

As its text reveals the Thirteenth Amendment "is not a mere prohibition of state laws establishing or upholding slavery, but an absolute declaration that slavery or involuntary servitude

shall not exist in any part of the United States." *Civil Rights Cases*, 109 U.S. 3, 20, 3 S.Ct. 18, 28, 27 L.Ed. 835 (1883); see *Griffin v. Breckenridge*, 403 U.S. 88, 105, 91 S.Ct. 1790, 29 L.Ed.2d 386 (1971); *Jones v. Alfred H. Mayer Co.*, supra, 392 U.S. at 437–447, 88 S.Ct. 2186; *Clyatt v. United States*, 197 U.S. 207, 216, 25 S.Ct. 429, 49 L.Ed. 726, 218 (1905). Thus, it cannot be doubted that the power vested in Congress to enforce this Amendment includes the power to enact laws of nationwide application.

*Carter*, 409 U.S. at 421–422, 93 S.Ct., at 605.[28]

## B. Sovereign Immunity.

Having found that § 1981 applies to the United States, its agencies and personnel, we must now determine whether or not this Court lacks the authority to grant relief where these same agencies and personnel allegedly have violated § 1981. The Court notes that plaintiff invokes 28 U.S.C. § 1343(4) as the jurisdictional basis for her § 1981 cause of action. Section 1343(4) provides:

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: . . . (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

---

24. We need not deal at length with the legislative history to § 1 of the 1866. Such analysis is provided in *Jones, supra.* See, in addition, note 20 *supra.* In light of the historical interrelationship between §§ 1981 and 1982, there is no reason to construe these sections differently in the context of sovereign immunity. *Cf. Johnson, supra*, 95 S.Ct. at 1725; *Tillman v. Wheaton-Haven Recreational Assn.*, 410 U.S. 431, 440, 93 S.Ct. 1090, 1095, 35 L.Ed.2d 403 (1973).

25. 17 Stat. 13; *Carter*, 409 U.S., at 423, 93 S.Ct. 605 (cases cited therein). See material cited in note 28 *supra.* Note 20, *supra*, explains more fully the relation between the 1866 Act, the 1870 Act, and the 1871 Act.

26. See note 20 *supra.*

27. See note 20 *supra; Carter*, 409 U.S., at 423, 93 S.Ct., at 605.

28. It is significant to note that § 1983, which is derived from § 1 of the 1871 Act, does not have universal applicability—it applies to state action—whereas § 1985(3), which has its roots in § 2 of the 1871 Act, is to be applied universally in the same manner as §§ 1981 and 1982. *See, Carter*, 409 U.S., at 423–424. 93 S.Ct. at 605 (dealing with applicability of § 1983); *Griffin*, 403 U.S., at 96–105, 91 S.Ct. 1795–1800 (dealing with the applicability of § 1985 and disapproving *Collins v. Hardyman*, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253 (1951) where the Court in order to avoid difficult constitutional questions, in effect construed § 1985(3) to reach only conspiracies under color of state law).

■ A cursory reading of this provision clearly shows that it empowers this Court to remedy violations of rights granted in § 1981. Consequently, it would be inconsistent to view the doctrine of sovereign immunity as barring this Court from taking jurisdiction over a § 1981 cause of action. *Cf. Sperling, supra,* at 473.[29]

*Gnotta v. United States,* 415 F.2d 1271 (8th Cir. 1969), defendants' primary authority, does not cause us to reach a different conclusion. In *Gnotta,* the Court expressly acknowledges the fact that it did not have any provision of the Civil Rights Act of 1866 before it and that, therefore, the *Jones* case was inapposite. The Court says at 1278–1279:

This court, of course, is most familiar with the *Jones* case. We fail to see its application here, and we get little assistance from the plaintiff's argument as to its general applicability. The Joneses did invoke federal jurisdiction under § 1343(4) but their action, if 42 U.S.C. § 1982 was applicable, was then clearly "authorized by law". *Jones v. Alfred H. Mayer Co.,* supra, 392 U.S. at 412 n. 1, 88 S.Ct. 2186, 20 L.Ed.2d 1189. The Supreme Court held that § 1982 was applicable. In the present case, there is nothing comparable to § 1982 unless the Executive Order in question could so qualify. We have held above that it does not.

Indeed, the above quotation shows that the Court in *Gnotta* would disagree with the position taken by the defendants in the instant action. For, the Court seems to suggest that where Congress provides a federal jurisdictional basis for a particular cause of action, the argument that the doctrine of sovereign immunity bars federal courts from taking jurisdiction over said cause of action is a *non sequitur.*

■ Even if we did not find a waiver of sovereign immunity for § 1981 suits against the United States, its agencies and personnel, we would at least have to allow plaintiff to proceed against the individual named defendants. For, ever since *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), it has been clear that one may enjoin a government official who is acting either in excess of authority or pursuant to an unconstitutional statute. The Court said that invalidity of the official's action means that he is "stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." 209 U.S., at 160, 28 S.Ct., at 454. *See e. g. Penn v. Schlesinger,* 490 F.2d 700, 703, *rev'd on other grounds* (*viz,* exhaustion of administrative remedies) 497 F.2d 970 (5th Cir. 1974) (*en banc*); *Bowers v. Campbell,* 505 F.2d 1155 (9th Cir. 1974).

■ Where a plaintiff sues a federal government official, the doctrine of sovereign immunity applies if the suit is actually one against the United States; and a suit is actually one against the United States if the request for relief would run against the Government's property or funds or would affect the official in the exercise of his official functions. *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963); *Larson v. Domestic and Foreign Commerce Corp.,* 337 U.S. 682, 687–88, 69 S.Ct. 1457, 1460, 93 L.Ed. 1628 (1959). Where it is determined that sovereign immunity applies, the suit still is not one against the United States if " . . . (1) [the] action by officers [is] beyond their statutory powers and (2) even though within the scope of their authority, the powers themselves or the manner in which they are exercised are constitutionally void." *Dugan,* 372 U.S., at 621–622, 83 S.Ct., at 1007 (cases cited there-

---

29. In the context of judicial review of administrative decisions, Judge Gibbons in *Sperling, supra,* at 473, states:

. . . long before the enactment of § 717, the Third Circuit had concluded that other jurisdictional grants waived the federal

government's sovereign immunity as a bar to the review of federal employment decisions. [cases omitted] A back pay award was available against the federal government before enactment of § 717. See Back Pay Act of 1966, 5 U.S.C. § 5596.

in). *See also, Bowers, supra*, at 1158; *Penn, supra*, at 703. "[A] violation of Section 1981 by a federal official must be deemed an ultra vires action on the official's part." *Penn, supra*, at 704.

Thus, because we conclude that (1) § 1343(4) waives sovereign immunity for a § 1981 cause of action, (2) the Third Circuit, prior to the enactment of Section 717(c), has found a waiver of sovereign immunity in government employment cases, and (3) the individual named defendants are not immune for racial discriminatory acts, we deny defendants' motion to dismiss.

■■■■■ We do not agree with the second leg of defendants' argument—*viz.*, that federal employees must exhaust available administrative remedies under § 1981. It is well established that exhaustion of Title VII administrative remedies is not a jurisdictional prerequisite to a federal district court suit charging discrimination in violation of § 1981. *Johnson*, 95 S.Ct., at 1719–20 *citing* legislative history to Sections 716, 717 and *citing Alexander v. Gardner-Denver Co.*, 415 U.S., at 48, 94 S.Ct., at 1019; *Young v. International Telephone and Telegraph Co.*, 438 F.2d 757, 763 (3rd Cir. 1971). *See also, Damico v. California*, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); *McNeese v. Bd. of Ed.*, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622; *Monroe v. Pape*, 365 U.S. 167, 180–183, 81 S.Ct. 473, 480–482, 5 L.Ed.2d 492. *Cf. Hacket v. McGuire Brothers, Inc.* 445 F.2d 442, 444, n. 1. (3rd Cir. 1971). Also, Title VII does not preempt this Court's jurisdiction over actions brought to remedy discrimination violative of § 1981. *Johnson*, 95 S.Ct., at 1719; *Alexander*, 415 U.S., at 48, 94 S.Ct. at 1019; *Young, supra*, at 760–761.[30]

Accordingly, we deny defendants' motions as to Count I of the complaint and decide that plaintiff may proceed against all named defendants pursuant to the allegations in Count I.

### V.

■■■■■ Defendants also raise the issue of whether or not plaintiff is entitled to a trial *de novo*. *Sperling v. United States*, 515 F.2d 465 (3rd Cir. 1975) now controls this issue; accordingly, we hold that plaintiff is entitled to a trial *de novo* as to her Title VII cause of action. *See also, Ettinger, et al. v. Johnson, et al.*, 518 F.2d 648, No. 74–2127 (3rd Cir. Filed June 18, 1975); *Haire v. Calloway*, 526 F.2d 246 (8th Cir. 1975); *Hackley v. Rondebush*, 520 F.2d 108 (D.C.Cir. 1975) *rev'ing Hackley v. Johnson*, 360 F.Supp. 1247 (D.D.C. 1973). Also, since we have found that exhaustion of administrative proceedings is inapposite to a § 1981 cause of action, plaintiff is, of course, entitled to a trial *de novo* as to that cause of action.

### VI.

■■■■■ Finally, defendants contend that, based on the administrative record, they are entitled to summary judgment. Even though *Sperling, supra*, and *Ettinger, supra*, hold that under Title VII, federal employees are entitled to a trial *de novo* in the district courts, they also recognize that summary judgment can be had where no genuine issue of fact, as to the absence of discrimination against the federal employee, is presented. *Sperling, supra*, at 481–482, *Ettinger, supra*, at 653. In the instant action, plaintiff and defendants dispute the motivation[31] behind the creation and imple-

---

**30.** The Supreme Court in *Jones, supra*, stated that the Fair Housing Title of the Civil Rights Act of 1968 in no way impaired the sanction of § 1982. 392 U.S., at 413–417, 88 S.Ct., at 2189–2192. This in itself is adequate to dispose of any suggestion that Title VII of the Civil Rights Act of 1964 in some way supersedes the provisions of the 1866 Act. Also, the fact that there is a saving clause in the

1964 Act as respects "any right based on any other Federal . . . law not inconsistent" with that Act, tends to suggest that neither statute is to be viewed as superseding the other. *See, Sullivan*, 396 U.S., at 238–239, 90 S.Ct. at 405.

**31.** "Motivation is what § 717 is all about." *Sperling, supra*, at 482–483.

mentation of the classification system and also whether the system is racially and sexually discriminatory. These important issues of fact must be resolved at trial.

Further, the administrative record, submitted by defendants, is deficient in many respects. For example, it contains hearsay, the plaintiff has had no opportunity to probe, by cross-examination, the averments in the affidavits, and the administrative record shows no input of plaintiff except her letters of complaint and inquiry. Clearly, there are material factual matters in dispute which must be resolved. Consequently, there can be no summary judgment.

As we conclude that plaintiff may proceed with Counts I and III, the following Order is entered.

### ORDER

And now, this 7th day of January, 1976, upon consideration of defendants' motion to dismiss or, in the alternative, for summary judgment, for the reasons stated in the memorandum attached hereto, said motion is denied as to Counts I and III of plaintiff's complaint and granted as to Count II of plaintiff's complaint.