Joseph R. **HARRISON** and Carol R. Friedman, on behalf of themselves and all others similarly situated,

v.

William E. **SIMON**, Secretary of the United States Department of the Treasury et al.

Civ. A. No. 76–957.

United States District Court, E. D. Pennsylvania.

June 30, 1981.

Philip Stephen Fuoco, Frank Finch, III, Philadelphia, Pa., for plaintiffs.

Peter F. Vaira, U. S. Atty., William J. McGettigan, Asst. U. S. Atty., Philadelphia, Pa., for defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Defendants have moved to dismiss the complaint of plaintiff Joseph R. Harrison (Mr. Harrison) for lack of subject matter jurisdiction. Defendants have also moved for summary judgment on the claim of plaintiff Carol Friedman (Ms. Friedman) and Ms. Friedman has cross-filed for summary judgment. In addition, both plaintiffs have filed a motion for class certification.

Mr. Harrison, a black male, instituted this civil action for declaratory, injunctive and other relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., against the Secretary of the United States Department of the Treasury, the Commissioner of the Internal Revenue Service, the IRS Regional Commissioner for the Mid-Atlantic Region, the Philadelphia District Director of the IRS, and the Chief of the Audit Division of the IRS, Philadelphia District. Mr. Harrison alleges that defendants jointly and severally, and in their official capacities, discriminated and were continuing to discriminate against black and female employees of the IRS in regard to hiring, promotion, benefits, terms and conditions of employment, and salary, and that there existed a pattern and practice of discrimination on the basis of race and sex with regard to employment within the IRS in the Mid-Atlantic Region. Thereafter Mr. Harrison was granted leave to amend his complaint to add Ms. Friedman, a white female, as an additional plaintiff and to add Ms. Friedman's first line supervisor as an additional defendant. Plaintiff Harrison and additional plaintiff Friedman were also granted leave to amend their complaint to allege a class action under F.R.Civ.P. 23.

### I. Motion to Dismiss Plaintiff Harrison's Complaint.

Defendants have moved to dismiss Mr. Harrison's complaint on the ground that he has failed to properly exhaust his administrative remedies and therefore this Court lacks subject matter jurisdiction of his claim.

Mr. Harrison began his employment with the IRS on June 14, 1960. He states that he progressed to the position of Revenue Agent Conferee in the Wilmington District Office and in 1969 was accepted into the Regional Management Career Program (RMCP). The RMCP has as its purpose the placement and promotion of its members into supervisory positions. Mr. Harrison states that in September, 1970, he accepted a position as a Regional Analyst in Philadelphia. This position removed him from the RMCP, but in September, 1972, he reapplied for and reentered the RMCP. He alleges that he remained in the RMCP until August 31, 1975, during which period he actively sought promotional opportunities. He further alleges that he was never offered a promotion through the RMCP although he was qualified and received excellent evaluations.

In July, 1975, Mr. Harrison and three other candidates were considered for the position of Chief, Office Examination Branch, Audit Division, Philadelphia District. This was a GS-13 position which reported directly to the Chief and Assistant Chief of the Audit Division. At that time he was the Returns Program Manager, also

a GS–13 position reporting directly to the Chief and Assistant Chief of the Audit Division. Mr. Harrison was not chosen for the new position. On August 7, 1975, he submitted an informal complaint of discrimination to Ernest L. Sellers, the Equal Employment Opportunity (EEO) Counselor in the Philadelphia District. He stated therein that "[t]he nature of the grievance deals with the lack of employment opportunity because of discrimination based on race and color. The cause of the grievance is the alleged arbitrary and capricious manner of the Chief, Audit Division summarily dismissed my candidacy for the position of Chief, Office Examination Branch on July 23, 1975." As a result of this complaint, an agreement was reached whereby Mr. Harrison was transferred to another position at his then current grade in the Appellate Division of the Regional Office in Philadelphia. He was also to receive a new performance evaluation within 4 to 6 months and if such evaluation were satisfactory, he could apply to be reinstated into the RMCP.

By letter of August 27, 1975, entitled "Notice of Final Interview with EEO Counselor," Mr. Harrison was notified that he could file a formal Complaint of Discrimination in writing, using Civil Service Commission Form 894, within 15 calendar days. He did not file a formal discrimination complaint on Form 894 at that time but instead sent a letter, dated August 28, 1975, to the Regional Commissioner of the IRS. In this letter he stated in part:

> The original purpose of this memorandum was to file a formal grievance of discrimination experienced within my position and working surroundings.

> The nature of that grievance dealt with the lack of employment opportunity because of the discrimination based on race, color and ethnic origin.

> The cause of the grievance is the failure of the Chief, Audition Division to meet and deal with me as a member of the Audit Management Team due to his biased and discriminatory attitude towards my race and color.

> However, I am constrained to not file an E.E.O. complaint against the management team of which I still feel committed to, but rather point-out injustices I have endured working an all white Audit Management team in the Philadelphia District.

On September 23, 1975, the Acting Regional Commissioner of the IRS replied to Mr. Harrison's letter, stating that the letter would be reviewed by his office and the District Office and that he would contact Mr. Harrison at a later date. He also congratulated Mr. Harrison for his decision to work within the management team. The Regional Commissioner advised him in a letter dated December 1, 1975, that an inquiry had been made concerning the conditions mentioned in his letter and that the information obtained would be used in the future management of the Philadelphia District's Audit Division. The letter from the Regional Commissioner concluded:

> Your August 28, 1975 memorandum was not processed as an EEO complaint in accordance with your request. Authority to decide whether an employee of the Department of the Treasury has been discriminated against because of race or color is delegated only to the Director, Equal Opportunity Program, Department of the Treasury. If you wish such a decision, it will be necessary that you file a complaint of discrimination under the procedures described in the memorandum from your EEO Counselor, Ernest L. Sellers, Jr., dated August 27, 1975, subject: Notice of Final Interview with EEO Counselor.

On December 15, 1975, Mr. Harrison filed a formal EEO Complaint using CSC Form 894. On February 27, 1976, his complaint was rejected as being untimely filed. The instant lawsuit was commenced on March 29, 1976.

Also on March 29, 1976, Mr. Harrison filed a second formal EEO Complaint on CSC Form 894, alleging a pattern and practice of race discrimination at the IRS and requesting that his earlier complaint of discrimination be reinstated because of the

failure of the IRS to carry out the agreed upon resolution of the earlier charges. On November 3, 1976, his second complaint was rejected on the ground that his allegation concerning the general treatment of Blacks within the IRS failed to show how he had been affected personally and that his complaint concerning the failure of the IRS to carry out the resolution of the earlier charges was premature because selections had not yet been made for the RMCP.

The operation of Title VII as to claims of Federal employment discrimination was described as follows by the United States Supreme Court in *Brown v. GSA,* 425 U.S. 820, 829–832, 96 S.Ct. 1961, 1966–67, 48 L.Ed.2d 402 (1976):

> Section 717 of the Civil Rights Act of 1964, as added by § 11 of the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e–16, proscribes federal employment discrimination and establishes an administrative and judicial enforcement system. Section 717(a) provides that all personnel actions affecting federal employees and applicants for federal employment "shall be made free from any discrimination based on race, color, religion, sex, or national origin."
>
> Section 717(c) permits an aggrieved employee to file a civil action in a federal district court to review his claim of employment discrimination. Attached to that right, however, are certain preconditions. Initially, the complainant must seek relief in the agency that has allegedly discriminated against him. He then may seek further administrative review with the Civil Service Commission or, alternatively, he may, within 30 days of decision, file suit in federal district court without appealing to the Civil Service Commission.

Furthermore, prior to *Brown v. GSA, supra,* our Third Circuit had held that Federal employees must exhaust their administrative remedies before they are entitled to file a civil suit in the United States District Court. *Ettinger v. Johnson,* 518 F.2d 648 (3d Cir. 1975).

Defendants argue that Mr. Harrison has not exhausted his administrative remedies because he failed to follow the applicable regulation requiring a timely written complaint. 29 C.F.R. § 1613.214(a)(1)[1] provides:

> (a) *Time limits.* (1) An agency shall require that a complaint be submitted in writing by the complainant or his representative and be signed by the complainant. The complaint may be delivered in person or submitted by mail. The agency may accept the complaint for processing in accordance with this subpart only if—
>
> (i) The complainant brought to the attention of the Equal Employment Opportunity Counselor the matter causing him to believe he had been discriminated against within 30 calendar days of the date of that matter, or, if a personnel action, within 30 calendar days of its effective date; and
>
> (ii) The complainant or his representative submitted his written complaint to an appropriate official within 15 calendar days of the date of his final interview with the Equal Employment Opportunity Counselor.

It thus appears that an employee runs afoul of the exhaustion doctrine if he fails either (a) to bring the alleged discriminatory matter to the attention of the EEO Counselor within 30 days of the discriminatory action or, if a personnel action, within 30 days of its effective date, or (b) to submit a written complaint to an appropriate official within 15 days of his final interview with the EEO Counselor.

■ Although Mr. Harrison consulted the EEO Counselor within 30 days of his failure to receive the appointment as Chief of the Office Examination Branch, he did not file his formal written complaint within 15 calendar days of the date of his final interview with the EEO Counselor. However, he did file a formal written complaint within 15

---

1. At the time Mr. Harrison filed his EEO Complaint the administrative procedures were found in 5 C.F.R. § 713.214.

days of the date of the letter which he received from the IRS Regional Commissioner, advising him that if he wished a decision on his claim of race discrimination he should file a written complaint pursuant to the procedures outlined in the memorandum from the EEO Counselor. Such advice from the Regional Commissioner led Harrison to believe that a complaint filed within 15 days of the Regional Commissioner's letter would be received as timely.

In *Richerson v. Jones*, 572 F.2d 89, 95–96 (3d Cir. 1978), our Circuit Court stated:

[S]ince lay persons initiate the often complex process of resolving employment discrimination complaints, the procedural requirements in the Title VII area are neither interpreted too technically nor applied too mechanically.... Thus, where the employee has not bypassed the administrative process and where the statutory purpose preferring conciliation has been served, the failure to comply perfectly with the procedural requirements of Title VII may not be fatal to the employee's cause of action.

The Court finds that it was not the intention of Mr. Harrison to bypass the administrative process. He did engage in the conciliation process with the Regional Commissioner. Furthermore, an investigation of his complaint was conduct by the IRS and thus the government has not been prejudiced by Mr. Harrison's failure to comply perfectly with the procedural requirements. Mr. Harrison complied with what he understood was the procedure on the basis of statements in the letter dated December 1, 1975, which he received from the Regional Commissioner. In connection with the procedures to be following in pursuing an EEO complaint, the courts have concluded that "ignorance on the part of the uninitiated is a factor to consider in deciding whether such person has failed to exhaust administrative remedies." *Henry v. Schlesinger*, 407 F.Supp. 1179, 1185 (E.D.Pa.1976); *see Richerson v. Jones, supra*, at 96; *Ettinger v.*

*Johnson*, 518 F.2d 648, 651–52 (3d Cir. 1975). For the reasons heretofore pointed out, the Court finds that although Mr. Harrison failed to comply "perfectly" with the procedural requirements as delineated in 29 C.F.R. § 1613.214(a)(1), his failure is not fatal to his cause of action. This Court will, therefore, enter an Order denying defendants' motion to dismiss Mr. Harrison's complaint for lack of subject matter jurisdiction.

## II. *Cross-Motions for Summary Judgment as to Plaintiff Friedman's Claim.*

Defendants have moved for summary judgment on Ms. Friedman's claim and Ms. Friedman has cross-filed for summary judgment.

Ms. Friedman is a white female who was a GS–9, Revenue Officer, of the Collection Division in the IRS Philadelphia District Office until she resigned on July 13, 1975. She alleges that she was discriminated against in that she was twice denied promotions to a GS–11, Revenue Officer position on account of her sex. She also alleges that because she filed a charge of employment discrimination she was denied the opportunity to be granted "leave without pay" status when she and her husband moved to Ohio. Because there are genuine issues of material fact as to whether the numerical rankings on which the promotion actions were based were infected by sexual bias, and as to whether Ms. Friedman was denied the opportunity for "leave without pay" status in retaliation for filing her complaint of employment discrimination, this Court will enter an Order denying the cross-motions for summary judgment.

## III. *Plaintiffs' Motion for Class Certification.*

Plaintiffs seek to maintain their claim of discrimination in employment as a class action pursuant to F.R.Civ.P. 23(b)(2).[2] Plain-

2. Rule 23 provides in pertinent part:
(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only

if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representa-

tiffs have moved to certify as a class "all past, present and future black and female employees of the Philadelphia District of the Internal Revenue Service employed in any Internal Revenue Service position classified at GS–5 or above and eligible for promotion into any Internal Revenue Service position classified at GS–9 or above." Defendants have opposed the motion for class certification, contending that plaintiffs have not satisfied any of the requirements of F.R.Civ.P. 23(a). For the reasons hereinafter set forth, plaintiffs' motion for class certification will be denied.

■ The burden of demonstrating that all of the requirements of Rule 23(a) have been met rests on the party seeking to utilize the class action mechanism. *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 246 (3d Cir.), cert. denied, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). "It is now clear that placing the burden on the class representative to show there is a class and his right to represent it does not mean that he must establish his own case on the merits before a preliminary determination of the class action can be made." 3B Moore's Federal Practice ¶ 23.02–2 at 23–96–23–97. However, plaintiffs must set forth sufficient factual information to enable the Court reasonably to permit the action to continue as a class action under Rule 23. *Hannigan v. Aydin Corp.*, 76 F.R.D. 502 (E.D.Pa.1977). In ruling on a motion for class certification we may consider reasonable inferences drawn from the facts before us at this stage of the proceedings. *Senter v. General Motors Corp.*, 532 F.2d 511, 523 (6th Cir. 1976).

■ The Court has reviewed the pleadings, the interrogatories and answers to interrogatories filed, and listened to oral argument as to whether a class should be certified in this matter. The Court finds that the plaintiffs have not carried their burden of showing that all the prerequisites to utilizing a class action have been satisfied.

■ Rule 23(a)(2) requires that there be questions of law or fact common to the class, although not all questions of law or fact raised in the litigation need be in common. 7 Wright and Miller, *Federal Practice and Procedure*, § 1763 at 607. Although plaintiffs allege across the board discrimination in hiring, promotion, salary, and other terms and conditions of employment, they seek in this action to represent only those blacks and women in the Philadelphia District Office of the IRS who have been or may be denied promotional opportunities by the actions, practices and policies of the defendants. In connection therewith, plaintiffs allege that the defendants have maintained "policies and practices which utilize subjective non-job related criteria in promotion decisions, which criteria operate disparately to affect adversely both blacks and females because of their race or sex, respectively." However, the record does not contain any information from which the Court can infer a policy or practice of discriminating against all black and all females in the Philadelphia District Office of the IRS.

Mr. Harrison has alleged discriminatory treatment by specific individuals in the Audit Division of the Philadelphia District Office as the basis for his failure to secure the job of Chief of the Office Examinations Branch.

Ms. Friedman has alleged discriminatory treatment as regards her numerical rankings by two panels of 3 persons in the Collection Division and comments made by members of those panels in connection with her applications for promotion. She also alleges that she was discriminated against

tive parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

\*   \*   \*   \*   \*   \*

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. . . .

because of her gender in her failure to be selected for promotion by the Chief of the Collection Division (the individuals who were chosen for promotion by the Chief of the Collection Division had received higher numerical rankings from the ranking panels).

■ In order to satisfy the requirement of Rule 23(a)(2) that there be questions of law or fact common to the class it must appear that the alleged unlawful discrimination is practiced throughout the organization rather than on an individual basis. *Hannigan v. Aydin Corp., supra*, at 507. Plaintiffs here have at most specifically alleged instances of individual discrimination within their own divisions. There is no factual information from which this Court can infer a pattern or practice of discrimination within the entire Philadelphia District Office. Therefore, plaintiffs have failed to satisfy the commonality requirement of Rule 23(a)(2) as to a class other than employees in their own divisions.

■ In addition, plaintiffs have failed to satisfy the requirement of Rule 23(a)(3) that the claims or defenses of the representative parties are typical of the claims or defenses of the proposed class. Typicality exists where the plaintiffs have demonstrated some "nexus" with the claims of other class members, which can be shown by demonstrating the similarity between the plaintiffs' conditions of employment and those of other class members and the similarity between the alleged discrimination affecting the named plaintiffs and that affecting the class. *Bartelson v. Dean Witter & Co.*, 86 F.R.D. 657, 668 (E.D.Pa.1980), citing *Hannigan v. Aydin, supra*.

We have talked about the requirement of commonality in Rule 23(a)(2) and we have talked about the requirement of typicality in Rule 23(a)(3) and it would appear that in this particular case commonality and typicality are interrelated. As is pointed out in 7 Wright & Miller, § 1764 at page 614, the standards for the typicality prerequisite under subdivision (a)(3) can be closely related to the test for the common question prerequisite in subdivision (a)(2). As we pointed out in discussing the commonality requirement, plaintiffs have alleged specific instances of discrimination only within the Audit Division and the Collection Division of the Philadelphia District Office of the IRS. Furthermore, the Philadelphia District Office comprises six divisions, with different qualifications, job knowledge, and duties required for professional and paraprofessional positions in the separate divisions. That these divisions are part of the same organization is insufficient to establish a "nexus" between plaintiffs' claims and those of employees in other divisions. *Hannigan v. Aydin Corp., supra*, at 510; *see Bartelson v. Dean Witter & Co., supra*, at 668. We therefore find that the plaintiffs have failed to satisfy the typicality requirement of Rule 23(a)(3) as to a class other than employees in their own divisions.

Furthermore, we find that there is a conflict of interest in allowing plaintiffs to represent a combined class of black and female employees. Indeed, in Ms. Friedman's first promotion action, a black female was promoted over her, and in her second promotion action a black male was selected over her. Neither plaintiff can claim to have been the victim of both racial and sexual discrimination. We find therefore, pursuant to Rule 23(a)(4), that Mr. Harrison could only represent a class of black employees and Ms. Friedman could only represent a class of female employees but neither plaintiff could represent both black and female employees.

The record at this time shows that there are only 10 female Revenue Officers in the Collection Division of the Philadelphia District Office whom Ms. Friedman could represent and there are only 11 black Revenue Officers in the Audit Division of the Philadelphia District Office whom Mr. Harrison could represent. There is nothing in this record which suggests that the class of female Revenue Officers whom Ms. Friedman could represent or the class of black Revenue Agents whom Mr. Harrison could represent exceeds these numbers.

■ Rule 23(a)(1) provides that a class action may be maintained only if "the class

is so numerous that joinder of all members is impracticable." This issue is sometimes referred to as "numerosity." Impracticability and numerosity depend on the particular facts of each case and no hard and fast rules have been established by the Courts as a basis for making this determination. In connection with the numerosity requirement the plaintiffs need not show the exact number of potential members in order to satisfy the requirement. However, the plaintiffs do have the burden of showing that the size is such that the joinder of all members is impracticable. Mere speculation as to the number of members who may be involved is not sufficient to satisfy Rule 23(a)(1). 7 Wright & Miller, § 1762 at page 595.

Classes of ten and eleven, respectively, are not "so numerous that joinder of all members is impracticable" in this case, particularly since this action is limited to the Philadelphia District Office of the IRS. Professor Moore has set forth general guidelines on the numerosity requirement:

> [No] hard and fast number rule can or should be stated.... Nevertheless, some general tendencies can be observed. While there are exceptions, numbers under twenty-one have generally been held to be too few. Numbers between twenty-one and forty have evoked mixed responses and again, while there are exceptions, numbers in excess of forty, particularly those exceeding one hundred or one thousand have sustained the requirement.

3B Moore's Federal Practice ¶ 23.05[1], at 23–150—23–155 (1980).

While the number of class members is not in itself determinative of the Rule 23(a)(1) standard, plaintiffs have failed to show any reason why joinder of all potential plaintiffs would be impracticable.

For the foregoing reasons, an Order will be entered denying plaintiffs' motion for class certification.