James GARRISON, Plaintiff,

v.

UNITED STATES of America, et al., Defendants.

No. CV–S–87–70–PMP.

United States District Court, D. Nevada.

July 19, 1988.

**1470**

F. Kelly Cawley, Sidell & Cawley, Las Vegas, Nev., for plaintiff.

Major William Ashcraft, HQ USAF/JACL, Washington, D.C., Ruth L. Cohen, Asst. U.S. Atty., Las Vegas, Nev., for defendants.

## MEMORANDUM OPINION AND ORDER

PRO, District Judge.

Plaintiff JAMES GARRISON ("Garrison") filed a Complaint (# 1) on January 30, 1987, against his former employer, Defendant UNITED STATES, et al., ("Air Force"), pursuant to Title VII of the Civil Rights Act of 1964 alleging that racial discrimination caused him to be terminated from his temporary position at Nellis Air Force Base.[1] The Air Force filed a Motion to Dismiss or, in the alternative, for Summary Judgment (# 6) on July 24, 1987. Garrison subsequently filed an Amended Complaint (# 8) on August 7, 1987. The Court entered an Order (# 10) on September 1, 1987 denying the Air Force's Motion.

There remain seven counts in the Amended Complaint.[2] The first cause of action alleges racial discrimination in employment and is based on Title VII. The second cause of action is based on allegedly unconstitutional wrongful termination. The third cause of action alleges that the order issued by the Commander of Nellis Air Force Base which barred Garrison from entering the base deprived him of constitutionally protected liberty and property rights without due process of law. The fourth, fifth, eighth, and ninth causes of

action are based on claims of common law tort and/or state law, including violation of the covenant of good faith and fair dealing in employment (fourth cause of action), intentional infliction of emotional distress (fifth cause of action), wrongful termination (eighth cause of action), and wrongful interference with prospective business relationships (ninth cause of action).

Jurisdiction is not based on diversity. Rather, Garrison asserts federal question jurisdiction over the Title VII claim (first cause of action) as well as the constitutional claims (second and third causes of action), and pendent jurisdiction over the state tort claims.[3]

Following the deposing of Garrison on December 2, 1987, the Air Force filed a Motion to Dismiss the Amended Complaint or, in the alternative, for Summary Judgment (# 14). On January 19, 1988, Garrison filed Points and Authorities in opposition (# 17), to which the Air Force filed a Reply (# 20) on February 19, 1988.

For the reasons discussed below, the Court must decline to dismiss Garrison's first cause of action, but must dismiss the remainder of Garrison's Amended Complaint (the second, third, fourth, fifth, eighth and ninth causes of action).

## FACTUAL BACKGROUND

Garrison, a white male who had retired from the Marine Corps in 1975, was hired by the Air Force in September 1985 to work as a temporary store worker in the

---

**1.** Garrison asserts jurisdiction under 42 U.S.C. § 2000e–5 and thereby misstates the proper jurisdictional foundation upon which this action is based. In fact, Garrison's Title VII claim can be brought only under 42 U.S.C. § 2000e–16, which extends the protection of Title VII to federal employees and is the exclusive and preemptive judicial remedy for claims of discrimination in federal employment. See *Brown v. General Services Administration*, 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 42 (1976). Garrison's inadvertence in citing jurisdiction does not, however, preclude the Court from considering the motions submitted by the parties.

**2.** By an Order (# 13) dated November 23, 1987, and pursuant to a stipulation by the parties, the

Court dismissed Garrison's sixth and seventh causes of action for "Negligent Infliction of Emotional Distress" and "Loss of Consortium," and dismissed all causes of action as to Plaintiff Julia Garrison.

**3.** While Garrison correctly labels counts four through eight as pendent claims, he neglects to so label his ninth cause of action. Likewise, the Air Force fails to include Garrison's ninth cause of action in its argument for dismissing the pendent claims. This mutual inadvertence does not, however, preclude the Court from designating the ninth cause of action as a tort claim which could be adjudicated only by the exercise of the Court's pendent jurisdiction.

commissary at Nellis Air Force Base in Las Vegas, Nevada.[4]

Garrison's initial supervisor in the commissary was the Produce Department Manager, Fred Tanksley, a black male. Garrison alleges that during the course of his employment at the commissary, he was subjected to a continual course of racial discrimination by Tanksley.

On July 26, 1986, while taking inventory of commissary supplies, Tanksley discovered that three cases of corn were missing. In the course of a survey of the general area, Tanksley observed a case of corn in the back of Garrison's truck, and reported his findings to the base security police. When questioned by Tanksley, Garrison explained that he had accepted the box of corn from Gary Schafer, an independent truck driver who delivered food supplies to the commissary on a daily basis from California. Apparently, on that particular day, Schafer had transported an extra box of corn to Nellis and offered it to Garrison, who had put the corn in his truck.

When a base security police officer, Jeffrey Parker, arrived at the scene, Tanksley related Garrison's explanation, whereupon Garrison was advised of his rights, and requested legal counsel. Thereafter, Officer Parker did not question Garrison about the box of corn. Garrison was issued a citation for petty larceny (the box of corn was valued at $10.77). Five days later, on July 31, 1986, Schafer confirmed Garrison's statement to Tanksley to the effect that Schafer had offered the corn to Garrison, who accepted it and placed it in the back of his truck.

The petty larceny charge against Garrison was dismissed on August 11, 1986. On August 19, 1986, however, Patricia Lytle, Grocery Department Manager, notified Garrison in writing that since his acceptance of the box of corn from Schafer for his personal use violated Air Force regulations, Garrison was terminated from his temporary position, effective August 29, 1986.

On September 3, 1986, the Commander of Nellis Air Force Base, Colonel Lovegren, issued a written order (the "bar order") to Garrison which barred him from reentering Nellis Air Force Base on the basis that Garrison's actions amounted to the "apparent wrongful conversion of commissary property" and were "prejudicial to the maintenance of good order and discipline" on the base. The order not to reenter, issued pursuant to 32 C.F.R. § 809(a)(1), was to be effective September 9, 1986, and advised Garrison of the procedure to follow if he desired reconsideration. Following Garrison's request for reconsideration, the bar order was lifted on October 2, 1986.

Subsequent to his termination from employment, on August 26, 1986, Garrison contacted an Equal Employment Opportunity (EEO) Counselor and alleged that his termination was based on racial discrimination. In addition, Garrison alleged that he had been apprised of the Air Force regulations concerning ethical standards of conduct only after the incident which led to his termination.

On October 28, 1986, after unsuccessfully attempting to resolve the complaint informally, Jim Murphy, the Chief EEO Counselor, gave Garrison's attorney, F. Keith Cawley, a Notice of Final Interview, advising Garrison of his right to file a formal administrative discrimination complaint within 15 days of receipt of the notice. On November 12, 1986, Cawley telephoned Air Force attorney, Todd Norton, acknowledged that November 12 was the final day on which Garrison could file a timely formal complaint, but inquired as to the possibility of whether a late complaint would be accepted. Norton advised Cawley that the 15-day time limit was strictly construed, and that to be considered timely, any complaint would have to be postmarked no later than November 12, 1986.

---

**4.** Temporary employees receive temporary limited appointments for a specified period not to exceed one year. A temporary limited appointment does not confer a competitive status and, therefore, temporary employees may be separated at any time upon notice in writing from an appointing officer. *Federal Personnel Manual* (FPM), Chapter 316, Subchapter 4, ¶ 4–2; (# 14, Exhibit 4 attached thereto).

Cawley filed a formal discrimination complaint on Garrison's behalf and had it placed in the United States mail that day (November 12, 1986) prior to 5:00 p.m. The formal complaint was not postmarked, however, until November 13, 1986, one day after the 15–day limitations period expired.

Garrison's Complaint (# 1) was initially filed with this Court on January 30 1987, and was amended on August 7, 1987 (# 8).

## TITLE VII CLAIM (FIRST CAUSE OF ACTION) NOT BARRED FOR FAILURE TO SERVE PROPER PARTY DEFENDANTS

■ Garrison's first cause of action alleges violation of his Title VII rights to be free from racial discrimination in employment. The Air Force relies on 42 U.S.C. § 2000e–16(c) which provides that federal employees may file civil actions to enforce their rights under Title VII and that "the head of the department, agency, or unit, as appropriate, shall be the defendant." Accordingly, the Air Force asserts that the only proper defendant in this action could be the Secretary of the Air Force, the Honorable Edward C. Aldridge, Jr. Garrison's Amended Complaint names the United States of America, the Department of Defense, the Department of the Air Force, as well as the inevitable Doe Defendants. The Air Force asserts that the only appropriate remedy for not explicitly naming the Secretary is dismissal of Garrison's Title VII claim for lack of jurisdiction. The Court cannot agree.

The Affidavit of Mailing (# 2) regarding the service of the Summons and the Complaint in this action lists the following parties: Department of Defense, Department of the Air Force, and the United States Attorney General. Consequently, while the Secretary of the Air Force is not explicitly listed by name, Garrison can amend his Amended Complaint pursuant to Fed.R.Civ. P. 15(c) to name the Secretary of the Air Force as a party defendant. In a suit against the United States Government, the amendment will relate back to the date of the mailing of process to, *inter alia,* the United States Attorney General. Fed.R.

Civ.P. 15(c) (¶ 2). The service of process to the United States Attorney General (as well as to the Department of the Air Force) was mailed May 22, 1987.

Moreover, Fed.R.Civ.P. 4(d)(5) provides that service upon "an officer or agency of the United States is made by serving the United States [under Fed.R.Civ.P. 4(d)(4)] and by sending a copy of the summons and of the complaint by registered or certified mail to such officer or agency." Regulations provide that the only persons who can accept service of process for the Department of the Air Force are the Secretary of the Air Force, or his designee, the Chief, Litigation Division, Office of the Judge Advocate General. 32 C.F.R. § 257.5(d) (1984).

Garrison sent copies of the summons and complaint to, *inter alia,* the "Department of the Air Force, c/o Department of Defense, Washington, D.C." The Court finds that the address at which Garrison served the Air Force is sufficient for service of process under Fed.R.Civ.P. 4(d)(5). Even if the service did not meet the technical requirements of the regulations, it did accomplish what it was intended to do—afford the Air Force notice of the pendency of this action. Significantly, the Air Force has not contended that the service employed resulted in material prejudice to some substantive right. *E.g., Dodson v. U.S. Army Finance & Accounting Center,* 636 F.Supp. 894, 896 (S.D.Ind.1986), citing *Hawkins v. Department of Mental Health,* 89 F.R.D. 127, 128 (W.D.Mich.1981); *Miree v. United States,* 490 F.Supp. 768, 776 (N.D.Ga.1980).

In sum, Garrison's first cause of action, arising under Title VII, cannot be dismissed for the failure to name the Secretary of the Air Force as a Defendant or for inadequate service of process.

## TITLE VII CLAIM (FIRST CAUSE OF ACTION) NOT BARRED BY ONE DAY DELAY IN FILING COMPLAINT WITH EEOC

■ The Air Force directs the Court's attention to the operation of 42 U.S.C. § 2000e–16, which proscribes federal em-

ployment discrimination and establishes an administrative and judicial enforcement system. This system is described in 42 U.S.C. § 2000e–16(c),[5] and in regulations promulgated by the Equal Employment Opportunity Commission (EEOC) pursuant to 42 U.S.C. § 2000e–16(b). *See* 29 C.F.R. §§ 1613.211–1613.283.

The Air Force argues that Garrison has not exhausted his administrative remedies because he failed to follow the applicable regulation requiring a timely written complaint. A complainant runs afoul of the governing administrative requirements if he fails either (1) to bring the alleged discriminatory matter to the attention of the EEO Counselor within 30 days of the alleged discriminatory action or, if a personnel action, within 30 days of its effective date, or (2) to submit a written complaint to an appropriate official within 15 days of his final interview with the EEO Counselor. 29 C.F.R. § 1613.214(a)(1).

The record before the Court indicates that while Garrison consulted the EEO Counselor at Nellis Air Force Base within 30 days of his termination, he did not file his formal written complaint within 15 calendar days of the date of his receipt of a Notice of Final Interview from the EEO Counselor. Instead, Garrison's attorney deposited the complaint in the United States mail in the late afternoon of the fifteenth day following his receipt of the Notice of Final Interview; consequently, the complaint was not postmarked until the following day—one day beyond the regulatory deadline.

In essence, then, the Air Force maintains that this Court is without jurisdiction to consider Garrison's Title VII claim for alleged racial discrimination because the letter containing the formal complaint, addressed to the Nellis Air Force Base EEO Counselor and dated 15 days following receipt of the Notice of Final Interview, was not postmarked on the same day it was mailed.

The Court must reject this argument as patently unreasonable, and not consonant with the policies underlying Title VII:

As had been pointed out on more than one occasion, the administrative deadlines in question here are not jurisdictional. Rather, they function like a statute of limitations, and "like a statute of limitations [are] subject to waiver, estoppel, and equitable tolling." The existence of such excusing circumstances should be considered in light of the *purpose* of the doctrine of exhaustion of administrative remedies.

... Exhaustion is required in order to give federal agencies an opportunity to handle matters internally whenever possible and to ensure that the federal courts are burdened only when reasonably necessary. Congress wanted to give each agency "the opportunity as well as the responsibility to right any wrong that it might have done." Congress never, however, wanted the exhaustion doctrine to become "a massive procedural roadblock to access to the courts." Rather, "Congress contemplated that the exhaustion doctrine would be held within limits consonant with the realities of the statutory scheme." *Brown v. Marsh,* 777 F.2d 8, 14 (D.C.Cir. 1985) (emphasis original, citations omitted).

Precisely the same issue raised by the Air Force was presented in *Harrison v. Simon,* 91 F.R.D. 423, 428 (E.D.Pa.1981), in which the Pennsylvania District Court quoted the Third Circuit's decision in *Richerson v. Jones,* 572 F.2d 89, 96 (3rd Cir. 1978), to wit:

... where the employee has not bypassed the administrative process and where the statutory purpose preferring conciliation has been served, the failure to comply perfectly with the procedural requirements of Title VII may not be fatal to the employee's cause of action.

**5.** 42 U.S.C. § 2000e–16(c) permits an aggrieved employee to file a civil action in federal district court to review her claim of employment discrimination. Initially, however, the complainant must seek relief in the agency that has allegedly discriminated against her. She then may seek further admnistrative review with the EEOC or, alternatively, she may, within 30 days of decision, file suit in federal district court without appealing to the EEOC.

As in the situation presented in *Harrison v. Simon, supra,* the Court finds that Garrison did not bypass the administrative process mandated by 42 U.S.C § 2000e–16(c) and the implementing regulations. He did engage in the informal process with the Nellis Air Force Base EEO Counselor within 30 days of his termination from employment. Furthermore, the Air Force does not allege that it had been prejudiced by the fact that the formal discrimination complaint was postmarked on the sixteenth, rather than the fifteenth, day following Garrison's receipt of Notice of Final Interview from the EEO Counselor.

Had Garrison purposefully attempted a bypass of the regulations governing the initiation of Title VII charges by federal employees, such as failure to initiate a charge with the EEO Counselor, the Court would consider such dereliction fatal to his Title VII claim. The record before the Court does not present such a scenario.

## TITLE VII IS THE EXCLUSIVE REMEDY FOR EMPLOYMENT DISCRIMINATION AND PRECLUDES GARRISON'S RECAST CONSTITUTIONAL CLAIM (SECOND CAUSE OF ACTION)

■ The Air Force contends that Garrison's second cause of action, alleging wrongful termination without due process of law, merely recasts his first cause of action under Title VII, alleging racial discrimination as the cause of his termination from employment. The Court agrees.

In private employer situations which are governed by 42 U.S.C. § 2000e–5, the Supreme Court has insisted that "the aggrieved individual clearly is not deprived of other remedies he possessed and is not limited to Title VII in his search for relief." *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 459, 95 S.Ct. 1716, 1719, 44 L.Ed. 2d 295 (1975). In contrast, 42 U.S.C. § 2000e–16 provides the exclusive remedy for claims of discrimination in federal employment. *Brown v. General Services Administration,* 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976). *Brown* distinguishes private employment cases on

the basis of legislative history of the Title VII amendment enacting 42 U.S.C. § 2000e–16 and sovereign immunity. *Brown* at 833–34, 96 S.Ct. at 1968–69.

While 42 U.S.C. § 2000e–16 provides the exclusive judicial remedy for discrimination against federal employees, "Title VII does not preclude separate remedies for *unconstitutional action other than discrimination* based on race, sex, religion or national origin." *White v. General Services Administration,* 652 F.2d 913, 917 (9th Cir. 1981) (emphasis added). Non–Title VII claims, therefore, are not foreclosed if they are based on actions *other* than the discrimination outlawed by Title VII. "Nothing in [Title VII's legislative] history even remotely suggests that Congress intended to prevent federal employees from suing their employers for constitutional violations against which Title VII provides no protection at all." *Ethnic Employees of Library of Congress v. Boorstin,* 751 F.2d 1405, 1415–16 (D.C.Cir.1985).

Thus, Garrison's second cause of action would stand if it were based on other than the allegedly discriminatory actions against which Title VII provides protection. If Garrison's second cause of action were based upon distinct wrongs, not merely recharacterizations of the same allegedly discriminatory action upon which his Title VII claim (first cause of action) is based, the exclusivity of Title VII's comprehensive judicial and remedial scheme would be implicated.

The Court finds that this is not the case. Garrison's reliance on *Otto v. Heckler,* 781 F.2d 754 (9th Cir.1986), is misplaced. The constitutional claim contained in Garrison's second cause of action does not arise from a different factual predicate than the Title VII claim contained in his first cause of action. Nothing from the pleadings or from the record suggests that any of Garrison's claims arise from non-job related or non-personnel actions. Indeed, the factual predicate for the claims underlying his second cause of action is precisely the alleged racial discrimination which is also the basis of his Title VII claim. See *Otto,* at 756, citing *Nolan v. Cleland,* 686 F.2d 806, 815

(9th Cir.1982); *Clemente v. United States,* 766 F.2d 1358, 1364, n. 7 (9th Cir.1985).

Since Garrison's second cause of action for wrongful termination arises from the same alleged discriminatory behavior upon which his first cause of action for racial discrimination is based, Garrison's second cause of action is precluded by operation of Title VII's exclusive judicial scheme. *Arnold v. U.S.,* 816 F.2d 1306, 1311 (9th Cir. 1987), citing *Nolan, Otto, supra.*

### THIRD CAUSE OF ACTION (BAR FROM MILITARY BASE) FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

■ In his third cause of action, Garrison alleges that his constitutional rights were violated by the bar order issued by the Commander of Nellis Air Force Base following his termination from employment at the commissary. The Court accepts the Air Force's argument that the Court lacks jurisdiction under the doctrine of sovereign immunity (# 14, pp. 15–17). As noted by the First Circuit in *Serrano Medina v. United States,* 709 F.2d 104, 106 (1st Cir. 1983), which is cited by both parties. "[d]ebarment from a military installation falls within the discretionary function exception to the Federal Tort Claims Act." (Citing 28 U.S.C. § 2680(a); *Kiiskila v. United States,* 466 F.2d 626, 628 (7th Cir. 1972). Indeed, Garrison does not offer argument in rebuttal in his Opposition to Motion to Dismiss (# 17).

The Court further finds that Garrison acknowledges that under circumstances analogous to those that led to the bar order, the First Circuit in *Medina* determined that there is no constitutionally protected interest in access to a military base (# 17, p. 7). In effect, then, Garrison admits that his allegations of unconstitutional deprivation of liberty and property interests fail to state a claim upon which relief can be based. See also *Medina,* at 108; *United States v. Albertini,* 783 F.2d 1484, 1486 (9th Cir.1986) (due process does not require commander of military base to afford a hearing at or before time commander issued "bar letter").[6]

■ Garrison's assertion that the bar order was unreasonable and arbitrary likewise must fail. Garrison asserts that the bar order was issued without any factual investigation. Assuming *arguendo,* that this is true, the First Circuit in *Medina* noted that under *Cafeteria Workers v. McElroy,* 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961), the factual basis behind the commander's allegations is not subject to judicial scrutiny: "The [Supreme] Court was not willing to look behind the *'announced* grounds' for the exclusion; it upheld the exclusion because 'the *reason advanced'* was 'entirely rational.'" *Medina,* 709 F.2d at 109, citing *Cafeteria Workers,* 367 U.S. at 898, 81 S.Ct. at 1750. Under the circumstances of this action, the Court finds that the bar order issued to Garrison was based on legitimate grounds, in keeping with the broad discretion granted the base commander, pursuant to the applicable regulations. *Cf. Clemente v. United States,* 766 F.2d 1358, 1364 (9th Cir.1985) ("Notwithstanding [the district court's] finding that the Air Force failed fully to follow its own regulations, such procedural requirements, without more, do not create constitutionally cognizable property interests.").

Finally, Garrison asserts that
[t]he events which led up to the barment were also discriminatorily motivated. As alleged by MR. GARRISON in his Complaint and Affidavit, the entire accusation against him was motivated by racial discrimination on the part of his supervisor. The actions of this barment by [the base commander] therefore were the direct consequence of the initial discrimina-

---

**6.** Garrison points out that the *Medina* decision contains a footnote in which the First Circuit noted "one possible exception" to the rule that persons may be excluded from military bases without a hearing. *Medina,* 709 F.2d at 108, n. 3 (possible exception for the exercise of first amendment rights). Nevertheless, the more re- cent Ninth Circuit decision in *Albertini,* on remand from the Supreme Court, noted that the Supreme Court addressed and rejected the first amendment defense. *Albertini,* 783 F.2d at 1485. Consequently, no hearing was required prior to the issuance of the bar order.

tory action by MR. GARRISON's supervisor. (# 17, p. 8)

Inasmuch as 42 U.S.C. § 2000e–16 of Title VII is the exclusive remedy for federal employment discrimination, see discussion *supra*, to the extent that the barment order is part of the conduct complained of in Garrison's Title VII claim (first cause of action), Garrison's third cause of action is precluded, as it is necessarily subsumed within his Title VII claim.

### COURT DECLINES PENDENT JURISDICTION OVER STATE LAW TORT CLAIMS (FOURTH, FIFTH, EIGHTH, NINTH CAUSES OF ACTION)

■ Along with his Title VII employment discrimination claim (first cause of action), and his recast constitutional claims (second and third causes of action), Garrison brings four tort claims (fourth, fifth, eighth, and ninth causes of action). All of the tort claims involve very different issues than does Garrison's Title VII claim. In order to recover under the various tort theories, Garrison would have to submit proof focusing on the *manner* in which he was terminated, rather than the *reason* that he was terminated, which is the focus of Title VII. Accordingly, they are quite likely to confuse the issues and to complicate this action.

Pendent jurisdiction permits a federal court to adjudicate state claims that are presented together with a federal claim, provided that the claims arise out of a common nucleus of operative fact and are sufficiently related that a plaintiff would ordinarily be expected to try them all in one judicial proceeding. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). When those conditions are met, the federal court has the power to decide state law claims. The federal court need not exercise that power in every instance. Pendent jurisdiction is a matter within the discretion of the court, and is not a plaintiff's right. *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139.[7]

Once having determined that it has the power to hear pendent claims, the court must examine "the specific statute that confers jurisdiction over the federal claim, in order to determine whether 'Congress in [that statute] has ... expressly or by implication negated the exercise of jurisdiction over the particular non-federal claim.' " *Nystul v. Northwestern Telephone Systems, Inc.*, 623 F.Supp. 494, 496 (D.C.Mont. 1985), citing *inter alia, Owen Equipment and Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). "*Kroger* focuses on the question of whether the court in its discretion *should* exercise pendent jurisdiction." *Id.* (emphasis original).

*Kroger* has been cited extensively on the question of pendent jurisdiction in the context of Title VII actions. There is a split of authority as to whether pendent jurisdiction should be exercised in such cases. It is well settled, however, that a federal court should avoid needless decisions of state law, and should dismiss state claims without prejudice to their resolution in state tribunals, "if it appears that the state issues substantially predominate." *Gibbs*, 383 U.S. at 726, 86 S.Ct. 1139.[8]

---

7. Although the district court's discretion to assume jurisdiction over pendent claims is entitled to substantial deference on appeal, such discretion is not unbounded. The Supreme Court in *Gibbs* cautioned, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." 383 U.S. at 726, 86 S.Ct. at 1139 (footnotes omitted).

8. Garrison prays for punitive damages, which are available under his state and common law tort claims. In contrast, the relief available under Title VII is equitable in nature, including reinstatement and backpay, but not compensatory or exemplary damages. *E.E.O.C. v. Detroit Edison Co.*, 515 F.2d 301 (6th Cir.1975), vacated and remanded on other grounds, 431 U.S. 951, 97 S.Ct. 2669, 53 L.Ed.2d 267 (1977); *see also Johnson v. Railway Express Agency*, 421 U.S. 454, 458 n. 5, 461, 95 S.Ct. 1716, 1719 n. 5, 1720, 44 L.Ed.2d 295 (1975). Since most of the relief sought by Garrison is available only under the state tort claims, an assertion of pendent jurisdiction over state claims which predominate in this action is inappropriate. *See generally Wescott v. Wackenhut Corp.*, 581 F.Supp. 9 (S.D.Cal. 1983) (the district court concluded "that the state law claims ... constitute the 'tail' which wags the federal 'dog,' and that an assertion of pendent jurisdiction over them would be ill-advised.") Moreover, in a state court, Garrison would be entitled to a jury trial of his state and

While the Ninth Circuit has not directly considered the issue, several district courts in the Ninth Circuit have dismissed state claims in Title VII actions. *James v. Kid Broadcasting Corp.*, 559 F.Supp. 1153 (D.Idaho 1983) (age discrimination); *Nystul, supra* (sex discrimination); *Wescott v. Wackenhut*, 581 F.Supp. 9 (S.D.Cal.1983), (race discrimination); *Matthews v. North Slope Borough*, 646 F.Supp. 943 (D.Alaska 1986) (race discrimination). The Court accepts such precedent as persuasive. Garrison's fourth, fifth, eighth, and ninth causes of action are pendent state law claims which in the context of this action should be dismissed.[9]

IT IS THEREFORE ORDERED that Plaintiff Garrison's Amended Complaint shall be amended to name the Secretary of the Air Force, the Honorable Edward C. Aldridge, Jr., as Defendants, and that the Amended Complaint is dismissed as against all Defendants other than Aldridge.

IT IS FURTHER ORDERED that Defendant Air Force's Motion to Dismiss Plaintiff Garrison's First Cause of Action is denied.

IT IS FURTHER ORDERED that Defendant AIR FORCE's Motion to Dismiss Plaintiff Garrison's second, third, fourth, fifth, eighth and ninth causes of action is granted.

---

common law tort claims, while Title VII confers upon a plaintiff no right to a jury trial. *See Great American Federal Savings & Loan Assoc. v. Novotny*, 442 U.S. 366, 375, 99 S.Ct. 2345, 2350, 60 L.Ed.2d 957 (1979).

9. The federal interest in this action is limited under the Title VII mechanism to providing a prompt and expeditious remedy for acts of employment discrimination, as opposed to involvement with matters more properly adjudicated in a state forum:

There is no reason to believe that Congress, through the combination of the limited remedy provided by Title VII and the doctrine of pendent jurisdiction, intended that federal courts be required, or even that they be autho-

rized, to try in their entirety all cases involving employment discrimination. Federal courts are, within the Constitutional scheme, courts of limited jurisdiction. State courts are at least as competent to decide claims alleging [racial] discrimination, particularly of the kind alleged [in the pendent causes of action]. Indeed, the close questions of state law involving fundamental issues of state public policy which are often presented in such cases are most appropriately resolved in a state forum. This is especially so where, as in the present case, state law issues and remedies predominate the litigation. *Kritil v. Port East Transfer, Inc.*, 661 F.Supp. 66, 67 (D.Md. 1986).