**Howard E. ROBINSON, Plaintiff,**

v.

**OVERSEAS MILITARY SALES CORP.; Army & Air Force Exchange Service; Gregory W. Deering, SSG; Bradley J. Potter, CW2; and Randall L. Mullins, SSG, Defendants.**

**No. CV–92–6012.**

United States District Court, E.D. New York.

July 15, 1993.

Service, Gregory W. Deering, SSG, Bradley J. Potter, CW2, and Randall L. Mullins, SSG.

## MEMORANDUM AND ORDER

GLASSER, District Judge.

Plaintiff Howard Robinson ("Robinson") commenced this action against defendant Overseas Military Sales Corporation ("OMSC") under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and against the remaining defendants under the ADEA and 42 U.S.C. § 1983. Defendant OMSC moves for summary judgment on the ADEA claim. The government moves for dismissal of Robinson's claims against defendants Army & Air Force Exchange Service ("AAFES") and Gregory W. Deering, Bradley J. Potter, and Randall L. Mullins (the "individual defendants") (collectively the "federal defendants") in their official capacities for lack of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1) and for dismissal of Robinson's claims against the individual defendants in their individual capacities for lack of personal jurisdiction and for insufficiency of service of process, Fed.R.Civ.P. 12(b)(2) and (b)(5). For the following reasons, OMSC's summary judgment motion and the federal defendants' motion to dismiss are granted.

## FACTS

Plaintiff resides in Roxbury, Massachusetts. He worked as a sales agent for OMSC, a Swiss corporation with an office in Woodbury, New York, to sell automobiles to U.S. military personnel stationed in Korea. OMSC was formerly known as Chrysler Military Sales Corporation and is affiliated with Overseas Military Sales Group ("OMSG") and Overseas Military Sales Organization ("OMSO"), which are also Swiss corporations. *See* Aff. of Joan Albright, dated June 15, 1993, at ¶¶ 1, 3 ("Albright Aff.").

Howard E. Robinson, pro se.

John E. Page, Robinson Silverman Pearce Aronsohn & Berman, New York City, for defendant Overseas Military Sales Corp.

Elliot Schachner, Asst. U.S. Atty., Brooklyn, NY, for Ds Army & Air Force Exchange

Defendant AAFES, an instrumentality of the United States government, is jointly commanded by the U.S. Army and the Air Force. AAFES operates exchanges where military personnel may purchase goods and merchandise. AAFES entered into an agreement with Chrysler Corporation ("Chrysler") for

the latter to supply new cars for sale to military personnel at AAFES-operated exchanges. Chrysler, in turn, hired OMSC to employ independent sales agents to sell automobiles manufactured by Chrysler at AAFES-operated exchanges.

Robinson was employed by OMSG, OMSC and OMSO from September 1979 to August 1990 to sell Chrysler automobiles at Camp Walker and Camp Humphries, which are U.S. military installations in Taegu, Korea. *See* Albright Aff. at ¶ 12; Ex. 4 to *id.* (OMSG notifies AAFES in Korea that Robinson's employment was terminated as of August 20, 1990); Ex. 5 to *id.* (sales agency agreements executed between Robinson and OMSC or OMSO); Ex. 5 to *id.* (OMSG assigns manual to agent Robinson containing proprietary information). *See also* Pl.'s Mem. in Opp'n to Mot. to Dismiss at 1 (Chrysler Military Sales Corporation is also known as OMSG and OMSC). This action centers on the events leading up to Robinson's discharge in August 1990, his rehiring on December 7, 1990 only to be fired again on February 13, 1991, and his subsequent rehiring in August 1991 and his retermination in October 1991. Complaint at p. 3. Robinson claims that his discharge from employment was caused by the tortious acts of defendants Gregory W. Deering, Bradley J. Potter, and Randall L. Mullins. Those individuals served in the U.S. military and were stationed in Seoul, Korea during 1990 and 1991. Deering was a sergeant in the United States Military Police and Potter and Mullins were Special Agents in the Criminal Investigations Division (CID) of the United States Army. Those individuals conducted two investigations into allegations that Robinson and his Korean-born wife, Soon Seon Robinson, had sold duty free goods to Korean nationals on the black market in Korea and that they had improperly purchased rations at a military installation after their ration privileges had been revoked.

The first investigation began in November 1989 when Deering and Potter accompanied a Korean customs official, Detective Yim, to Robinson's home on November 3 for the purpose of interviewing Robinson to ascertain whether he could account for the luxury goods that he had purchased earlier from AAFES-operated exchanges. At the conclusion of that visit on November 3, Robinson's ration control plate was seized; his wife's ration control plate was seized on November 8, 1989. *See* CID Investigation Report, dated May 16, 1990 at 3 (Govt.'s Ex. E). Robinson alleges that defendant Deering also seized an original controlled item purchase refund record, dated November 31, 1988. *See* Plaintiff's Comments to *id.* at 3. (Pl.'s Ex. G). The army subsequently revoked his ration control privileges for one year. *See* Letter from AAFES, dated November 14, 1989 (Ex. 6 to Albright Aff.). At the conclusion of the first investigation, defendant Potter issued a report on May 16, 1990, in which he found that there was enough evidence to commence administrative proceedings against Robinson for violating various rules pertaining to the unlawful sale of duty free goods purchased at army facilities. Govt.'s Ex. E at 5–6; Govt.'s Ex. I (summary of prohibited activities relating to transfers of duty free goods and improper use of a ration control plate).

The second investigation began in September 1990 and continued until November 1990, culminating in a CID Investigation Report, dated November 7, 1990, which indicated that Robinson had wrongfully obtained a temporary ration card and had continued to purchase rations at various AAFES-operated facilities without authorization. Govt.'s Ex. F. *See also* Sworn Statement of Joseph Piette, dated October 19, 1990 (Govt.'s Ex. F.) (stating that he observed Robinson illegally purchasing items at AAFES-operated exchanges on September 25 and 30 and October 2, 1990 even after his original Ration Control Plate had been revoked and physically destroyed). Based on this report, an army commander barred Robinson from entering all Area IV military installations in Korea, except that Robinson could enter Camp Walker to obtain medical and dental care. *See* Letter of Debarment, dated December 10, 1990 (Ex. 9 to Albright Aff.)

Once Robinson was barred from entering military installations in Korea, OMSC fired him on February 13, 1991. Robinson was reinstated as a sales agent in August of 1991,

but was discharged in October 1991 when AAFES did not issue travel orders which would have enabled Robinson to enter military installations. Albright Aff. at ¶¶ 19–21. Robinson then timely filed a claim with the EEOC on December 10, 1991, Complaint ¶ 18, and received a right to sue letter on November 10, 1992. Ex. 1 to Albright Aff. Thereafter, Robinson commenced this action alleging that OMSC, at the behest of AAFES and of the individual defendants, terminated his employment based on his age of 57 years in violation of the ADEA. In addition, Robinson seeks to recover damages against AAFES and the individual defendants under 42 U.S.C. § 1983, alleging that they violated his constitutional rights by searching his home in Korea without a warrant and by filing false reports about his alleged wrongdoing which caused him both to lose his job with OMSC and prevented OMSC from rehiring him. Pl.s' Mem. in Opp'n to Mot. to Dismiss at 9.

OMSC moves for summary judgment on the ADEA claim. The government moves to dismiss the complaint against AAFES and the individual defendants in their official capacities on the grounds of sovereign immunity, Fed.R.Civ.P. 12(b)(1). The individual defendants also move to dismiss the complaint against them in their individual capacities for lack of personal jurisdiction, Fed.R.Civ.P. 12(b)(2), and alternatively, for insufficiency of service of process, Fed.R.Civ.P. 12(b)(5). For the following reasons, the defendants' motions are granted.

### A. OMSC's Summary Judgment Motion

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if ... there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In opposing a properly supported summary judgment motion, "an adverse party may not rest upon the mere allegations or denials of [its] pleading, but [its] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). The nonmovant, however,

"must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In deciding a summary judgment motion, the court need not resolve disputed issues of fact, but need only determine whether there is any genuine issue to be tried. *Eastman Mach. Co., Inc. v. United States*, 841 F.2d 469, 473 (2d Cir.1988). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant such that a jury could return a verdict in his favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), but "there can be 'no genuine issue as to any material fact'" if the plaintiff exhibits "a complete failure of proof concerning an essential element of [his] case...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The ADEA makes it "unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). OMSC moves for summary judgment on Robinson's ADEA claim on the grounds that (1) as a foreign corporation it is not an employer for ADEA purposes; (2) Robinson was not an employee for ADEA purposes; and (3) Robinson has failed to raise a genuine issue of material fact to support his allegation that he was fired on account of his age.

Robinson does not dispute that OMSC, OMSO and OMSG are foreign corporations. It is clear that foreign corporations are not subject to the prohibitions of the ADEA. *See* 29 U.S.C. § 623(h)(2) (prohibitions of ADEA do not apply to foreign person (or employer) who is not controlled by an American employer). Arguing that foreign corporations can be employers for ADEA purposes, Robinson points to 29 U.S.C. § 630(f), which provides that an employee for ADEA purposes includes "any individual who is a citizen of the United States employed by an employer in a workplace in a foreign country." However, the legislative history per-

taining to that section demonstrates convincingly that it extends the protection of the ADEA to American citizens who work outside of the United States for American employers. *See, e.g.,* S.Rep. No. 467, 98th Cong., 2d Sess. 36 (1984), *reprinted in* 1984 U.S.C.C.A.N. 2974, 3009 (amending ADEA to define "employee" to include "individual who is a citizen of the United States employed by a *U.S. employer* in a workplace in a foreign country") (emphasis added); H.R.Conf.Rep. 1037, 98th Cong., 2d Sess. 49 (1984), *reprinted in* 1984 U.S.C.C.A.N. 2974, 3037 (same quote); *see also E.E.O.C. v. Arabian American Oil Co.,* 499 U.S. 244, ——, 111 S.Ct. 1227, 1236, 113 L.Ed.2d 274 (1991) (express purpose of 1984 amendments to the ADEA was to "mak[e] provisions of the Act apply to citizens of the United States employed in foreign countries by United States corporations or their subsidiaries," quoting legislative history) (dictum).[1] Section 630(f) does not bring foreign corporations, which are not controlled by American employers, within the scope of the ADEA. Accordingly, Robinson's ADEA claim against OMSC fails as a matter of law.

■■■ Moreover, even if OMSC was subject to the ADEA, this Court would still enter summary judgment in its favor because Robinson has exhibited "a complete failure of proof concerning an essential element of [his] case...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *See also Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.) (summary judgment is appropriate in a discrimination case if the familiar Rule 56 standard is met), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). The trifurcated analysis of Title VII actions under *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981), applies to age discrimination claims under the ADEA. *Montana v. First Federal Sav. and Loan Ass'n of Rochester,* 869 F.2d 100, 103 (2d Cir.1989). As the Supreme Court stated in *Burdine:*

First, the plaintiff has the burden of proving by a preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff [makes this showing], the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." ·... Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

450 U.S. at 252–53, 101 S.Ct. at 1093 (quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 804, 93 S.Ct. 1817, 1824, 1825, 36 L.Ed.2d 668 (1973)). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). *See also St. Mary's Honor Center v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (holding that plaintiff bears the ultimate burden of demonstrating that he was discriminated against even if the trier of fact rejects the proffered non-discriminatory reasons for the discharge).

In this case, it is unnecessary to determine whether plaintiff has made a *prima facie* showing of age discrimination, because, even assuming that he has made the requisite showing, *see* Sworn Statement of Clarence Washington (claiming that Arnold Weber, Director of International Sales, stated that he wanted to hire younger salespersons for OMSC), it is clear that OMSC has articulated a "legitimate, nondiscriminatory reason" for plaintiff's termination—i.e., his inability to enter military bases in Korea after the army revoked his travel privileges. In turn, Robinson has failed to demonstrate that the stated reason is pretextual "either *directly* by persuading the court that a discriminatory reason more likely motivated the employer or *indirectly* by showing that the employer's

---

**1.** In enacting section 630(f), Congress intended to legislatively overrule those prior judicial decisions which had held that employees of American companies working abroad were not protected by the ADEA. *See, e.g., De Yoreo v. Bell Helicopter Textron, Inc.,* 608 F.Supp. 377 (N.D.Tex 1985), *aff'd,* 785 F.2d 1282 (5th Cir. 1986).

proffered explanation is unworthy of credence." *Long v. A.T. & T. Info. Sys., Inc.,* 733 F.Supp. 188, 200 (S.D.N.Y.1990) (quoting *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095) (emphasis added)). Under these circumstances, summary judgment in favor of OMSC would be warranted. *See, e.g., Smith v. American Express Co.,* 853 F.2d 151, 154–55 (2d Cir.1988) (while summary judgment is ordinarily inappropriate where plaintiff makes a *prima facie* showing of discrimination, it is appropriate where plaintiff cannot sustain his burden of demonstrating that the employer's proffered explanation is pretextual); *but cf. Maresco v. Evans Chemetics,* 964 F.2d 106, 114 (2d Cir.1992) (reversing summary judgment for employer where facts supporting plaintiff's *prima facie* case of age discrimination would also support his claim that employer's proffered non-discriminatory reason was pretextual).

■ As an aside, it is noted that the present record does not disclose whether Robinson was an employee of OMSC or whether he was an independent contractor. The ADEA only bars employers from discriminating against employees on account of their age; the statute does not apply to independent contractors. The Second Circuit has recently held that the district court must apply the factors of the common law agency test to determine whether an individual is an employee or an independent contractor for ADEA purposes. *Frankel v. Bally, Inc.,* 987 F.2d 86, 89–90 (2d Cir.1993). The traditional common law test for agency "focuses primarily on the 'hiring party's right to control the manner and means by which the product is accomplished.'" *Id.* at 89 (quoting *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 751, 109 S.Ct. 2166, 2178, 104 L.Ed.2d 811 (1989)). The *Reid* court identified the following factors as relevant to this determination:

the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the

hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Frankel,* 987 F.2d at 89 (quoting *Reid,* 490 U.S. at 751–52, 109 S.Ct. at 2178–79).

■ OMSC argues that Robinson was an independent contractor because the four agency agreements executed between OMSC/OMSO and Robinson, dated June 1, 1983; September 29, 1986; May 25, 1989; and December 7, 1990, specifically label him an independent contractor (¶ 10) and specify that he is responsible for his own taxes and health insurance (¶ 10) and that he will only receive commissions (¶ 7). However, these factors are not dispositive because this Court would be required to apply the remaining *Reid* factors to ascertain whether or not Robinson was an OMSC employee or an independent contractor. *See Frankel,* 987 F.2d at 87–88, (remanding case for district court to apply *Reid* factors notwithstanding that plaintiff employee had incorporated self and was specifically identified as an "independent contractor" and that he received commissions and was responsible for his own taxes and health benefits).

■ OMSC contends further that Robinson controlled his own daily time log and could hire others to assist him in selling automobiles to the military personnel in Korea, provided that anyone whom Robinson hired would meet AAFES criteria. Albright Aff. ¶ 20. However, Robinson has raised a material factual issue regarding the level of control which OMSC exercised over his work schedule. *See* Sworn Statement of Clarence Washington, sales manager of OMSC's corporate predecessor, Chrysler Military Sales Corporation, from 1981 until March 1990 (stating that Robinson was required to be at his sales location six days a week; that he had to arrive thirty minutes before opening time; and that he had to notify Washington if he would not be present on a particular day) (Ex. 2 to Pl.'s Mem. in Opp'n to Mot. for Summ. J.). OMSC argues that these work requirements were imposed by AAFES pursuant to its contract with Chrysler Corpora-

tion, *see* Ex. A to Reply Aff. of Arnold Weber, dated July 7, 1993, at ¶ 6, but the existing record does not contain the contract between OMSC and Chrysler which would presumably shift Chrysler's obligations under its contract with AAFES to OMSC which hires the independent sales agents.

### B. *Federal Defendants' Motion to Dismiss*

■ The federal defendants move to dismiss the complaint under various subdivisions of Rule 12(b) of the Federal Rules of Civil Procedure. As a preliminary matter, it is noted that Robinson cannot maintain an ADEA claim against the federal defendants because they did not employ Robinson. He was either an employee or independent contractor of three related private companies: OMSC, OMSG, and OMSO. In addition, as this Court has already determined that OMSC was not within the scope of the ADEA, then, *a fortiori*, there is no basis for imposing derivative liability upon the federal defendants who allegedly pressured OMSC to fire Robinson.[2]

### 1. Claims against AAFES and the Individual Defendants in their Official Capacities

■ Robinson's claims for damages against AAFES, a federal agency, and against the individual defendants in their official capacities are essentially claims against the United States and will be barred by the doctrine of sovereign immunity unless Robinson can demonstrate that Congress has unequivocally waived the immunity of the United States. *A.A.F.E.S. v. Sheehan*, 456 U.S. 728, 733–34, 102 S.Ct. 2118, 2121–22, 72 L.Ed.2d 520; *Keene Corp. v. United States*, 700 F.2d 836, 840–41, 845 n. 13 (2d Cir.), *cert. denied*, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983). In this case, Robinson may seek to rely on the Federal Tort Claims Act ("FTCA"), 28 U.S.C. 2671, *et seq.*, which allows the United States to be sued for damages arising out of the tortious acts of federal employees within the scope of their employment, 28 U.S.C. § 2679(b), provided that the tortious acts are within the scope of the statute, 28 U.S.C. §§ 2679, 2680, and that the plaintiff has exhausted his administrative remedies, 28 U.S.C. § 2675. Here, Robinson has failed to file an administrative claim which is a mandatory prerequisite before he can commence an action under the FTCA. 28 U.S.C. § 2675(a). Accordingly, to the extent that Robinson may have a FTCA claim against the United States, it must be dismissed for lack of subject matter jurisdiction. *McNeil v. United States*, —— U.S. ——, ——, 113 S.Ct. 1980, 1984, 124 L.Ed.2d 21 (1993) (upholding dismissal of *pro se* complaint under FTCA where plaintiff failed to exhaust his administrative remedies); *Keene Corp.*, 700 F.2d at 840–41 (district court lacks subject matter jurisdiction over FTCA claim where the claimant has not filed an administrative claim).[3]

■ Furthermore, even if this Court had jurisdiction over Robinson's tort claims against the United States, it would be driven to conclude that the majority, if not all, of his claim are meritless. First, Robinson has not supported his conclusory and incredible allegations that the individual defendants falsified any of the CID investigative reports. Robinson cites a June 17, 1991 letter from Brent Green, a Colonel in the U.S. Army and a Judge Advocate, which he claims demonstrates that he accounted for all of the missing items. Pl.'s Mem. in Opp'n to Mot. to Dismiss at 3–4; Pl.'s Ex. H. That letter does not support Robinson's claim. It merely indicates that the government gave him the benefit of the doubt as to those items

---

**2.** This Court also finds Robinson's claim that AAFES pressured OMSC to discharge Robinson to be frivolous. AAFES simply determined that Robinson was ineligible to enter its exchanges once the army revoked Robinson's ration and travel privileges based on his repeated violations of the rules and regulations applicable to transfers of duty free goods. *See* Govt.'s Exs. E, F and I; Exs. 6 and 9 to Albright Aff.

**3.** To the extent that Robinson alleges that federal employees committed tortious acts in Korea, the doctrine of sovereign immunity would, in any event, bar those claims because claims arising in a foreign country are specifically excluded from the scope of the FTCA. 28 U.S.C. § 2680(k); *Smith v. United States*, —— U.S. ——, ——, 113 S.Ct. 1178, 1180–82, 122 L.Ed.2d 548 (1993) (foreign country exception to FTCA under § 2680(k) precludes action against the United States for claims arising in foreign country).

**924**

which neither he nor his son, who was attending school in the United States, could account for. That letter goes on to state: "The fact remains that you and your wife admitted to transferring certain duty free items to Korean National personnel not authorized to receive or possess those items.... It is clear that you violated the law in these instances." Pl.'s Ex. H at 2. In addition, the other evidence of record renders Robinson's conclusory allegations of corruption by the CID investigators incredible as a matter of law.

Robinson next claims that his property was taken without due process of law because he alleges that the federal defendants made him lose his job with OMSC and prevented OMSC from rehiring him. *See* Pl.s' Mem. in Opp'n to Mot. to Dismiss at 9. This argument is frivolous because Robinson neither had a property interest in his job with OMSC as his contract was terminable upon thirty days prior notice, *see* ¶ 4 of agreements annexed as Ex. 5 to Albright Aff., nor did he have a property interest in being subsequently rehired by OMSC. Robinson also claims that army officials violated his rights by revoking his travel privileges without first presenting him with the CID investigation reports. Pl.s' Mem. in Opp'n to Mot. to Dismiss at 9–10. *See* Ex. 9 to Albright Aff. (Letter of Debarment, dated December 10, 1990 prohibiting Robinson from entering the Camp Walker army base based on his illegal black market activities). This argument fails because Robinson was not entitled to a hearing before the commanding officer barred him from visiting U.S. army installations in Korea where that officer relied on a rational reason for the debarment. *See, e.g., Cafeteria & Restaurant Workers Union, Local 473, AFL–CIO,* 367 U.S. 886, 894–99, 81 S.Ct. 1743, 1748–51, 6 L.Ed.2d 1230 (1961), *reh'g denied,* 368 U.S. 869, 82 S.Ct. 22, 7 L.Ed.2d 70 (1961); *United States v. Albertini,* 783 F.2d 1484, 1486–87 (9th Cir.1986); *Garrison v. United States,* 688 F.Supp. 1469, 1475 (D.Nev.1988). In addition, this claim would be barred by the doc-

trine of sovereign immunity because it is excluded from the FTCA under 28 U.S.C. § 2680(a) since the commanding officer performs a discretionary function in deciding whether to bar a civilian from an army base. *Garrison,* 688 F.Supp. at 1475 (citations omitted).[4]

Reading Robinson's complaint as liberally as possible, this Court can discern only one possibly meritorious claim, namely, that the individual defendants violated his Fourth Amendment rights by conducting warrantless searches of his residence in Korea on November 3, 1989 and October 11, 1990, and by seizing a document on November 3, 1989. While the Fourth Amendment does not protect American citizens from warrantless searches and seizures conducted by foreign officials in a foreign country, *United States v. Busic,* 592 F.2d 13, 23 (2d Cir.1978), it may protect American citizens abroad from warrantless searches and seizures undertaken as "joint ventures" by foreign authorities with the substantial participation of federal officials or where the foreign authorities are acting as agents of the federal government. *See, e.g., United States v. Verdugo–Urquidez,* 856 F.2d 1214, 1224–28 (9th Cir.1988), *rev'd on other grounds,* 494 U.S. 259, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990); *United States v. Peterson,* 812 F.2d 486, 490 (9th Cir.1987); *United States v. Hawkins,* 661 F.2d 436, 455–56 (5th Cir.1981); *United States v. Toscanino,* 500 F.2d 267, 280 n. 9 (2d Cir.1974); *Stonehill v. United States,* 405 F.2d 738, 742–43 (9th Cir.1968), *cert. denied,* 395 U.S. 960, 89 S.Ct. 2102, 23 L.Ed.2d 747 (1969); *Lau v. United States,* 778 F.Supp. 98, 100 (D.P.R. 1991), *aff'd,* 976 F.2d 724 (1st Cir.1992); *United States v. Molina–Chacon,* 627 F.Supp. 1253, 1258–59 (E.D.N.Y.1986), *aff'd on other grounds sub nom., United States v. DiTommaso,* 817 F.2d 201 (2d Cir.1987). The Second Circuit has yet to adopt the "joint venture" doctrine, *United States v. Maturo,* 982 F.2d 57, 61–62 (2d Cir.1992), *cert. denied sub nom., Pontillo v. United States,* —— U.S. ——, 113 S.Ct. 2982, 125

4. Robinson also seeks to bring a private cause of action under the criminal provisions of 18 U.S.C. §§ 242, 1385, which he clearly may not do, and in a supplemental submission he states that he is

not seeking damages for alleged violations of the Privacy Act, 5 U.S.C. § 552a or the Freedom of Information Act, 5 U.S.C. § 552. Pl.'s Supplemental Mem. of Law at 1.

L.Ed.2d 679 (U.S.1993) nor has the court addressed the extent to which the federal officials must participate before the "joint venture" exception will be invoked, *see, e.g., United States v. Paternina–Vergara,* 749 F.2d 993, 998 (2d Cir.1984), *cert. denied sub nom., Carter v. United States,* 469 U.S. 1217, 105 S.Ct. 1197, 84 L.Ed.2d 342 (1985); *Busic,* 592 F.2d at 23 n. 7.

Neither the government nor Robinson briefed the issue of whether the Fourth Amendment applied to a warrantless search of Robinson's home in Korea that was conducted by Korean customs officials in the presence of "representatives" of the United States government and whether Robinson's ration control plate and an original document were unconstitutionally seized from Robinson's residence in Korea. *See* Govt.'s Exs. E and F. However, since Robinson's claims against the United States are dismissed for lack of subject matter jurisdiction, this Court need not determine the applicability of the strictures of the Fourth Amendment to the warrantless search and seizure in Korea.[5]

2. Claims against the Individual Defendants in their Individual Capacities

 Robinson erroneously seeks damages against the individual defendants in their individual capacities for alleged violations of his constitutional rights under 42 U.S.C. § 1983 which, as the federal defendants properly note, is limited to state actors and does not apply to them. Since Robinson is proceeding *pro se,* however, this Court will construe his § 1983 civil rights claim as the analogous claim applicable to federal actors under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619

(1971). *See, e.g., Daloia v. Rose,* 849 F.2d 74, 75 (2d Cir.) (construing *pro se* § 1983 action as *Bivens* action against federal defendants), *cert. denied,* 488 U.S. 898, 109 S.Ct. 242, 102 L.Ed.2d 231 (1988). It is axiomatic that sovereign immunity will not bar a *Bivens* action against a federal official in his individual capacity, *Liffiton v. Keuker,* 850 F.2d 73, 78 (2d Cir.1988), unless the federal actor demonstrates that *Bivens* should not be extended to provide damages for a particular constitutional violation because "special factors counsel[ ] hesitation [in judicially creating a remedy] in the absence of affirmative action by Congress" or because Congress has created an equally effective, alternative remedy, such as the FTCA. *Carlson v. Green,* 446 U.S. 14, 18–19, 100 S.Ct. 1468, 1471, 64 L.Ed.2d 15 (1980) (quoting *Bivens,* 403 U.S. at 396–97, 91 S.Ct. at 2004).[6]

 Robinson's *Bivens* claim must nonetheless be dismissed for lack of personal jurisdiction, Fed.R.Civ.P. 12(b)(2). A district court must have jurisdiction over federal actors before it may entertain a *Bivens* suit. *Green v. McCall,* 710 F.2d 29, 31 & n. 4 (2d Cir.1983) (noting that the nationwide service of process provision in 28 U.S.C. § 1391(e) does not apply to claims against federal officials in their individual capacities). It is clear that the individual defendants in this case are beyond the jurisdictional reach of this Court. Robinson does not dispute that they do not reside in this state.[7] Nor may the individual defendants be haled into this Court under New York's "long arm jurisdiction" pursuant to section 302 of the New York Civil Practice Law and Rules because the alleged tortious acts occurred in Korea and none of the other subdivisions of that

---

**5.** Robinson also alleges that the government conducted an illegal search and seizure in Massachusetts. Pl.'s Mem. of Law at 11. In support of that allegation, Robinson cites Paragraphs 3.3 and 3.4 of Govt.'s Ex. E which merely state that CID requested that army personnel in Massachusetts interview Robinson's son, Kyu Tae Kim, who was attending Boston University, to ascertain whether he had any of the items that Robinson could not account for, and that such an interview took place. There is no mention that any items were seized or that Robinson's son was subjected to a search.

**6.** It is noted that Robinson cannot assert a *Bivens* action against the AAFES. *See, e.g., Platsky v. C.I.A.,* 953 F.2d 26, 28 (2d Cir.1991) (a *Bivens* action will not lie against a federal agency whose employees are accused of violating the plaintiff's constitutional rights).

**7.** Individual defendants Deering, Potter and Mullins currently work and reside in South Carolina, Louisiana and California, respectively. Govt.'s Mem. of Law in Supp. of Mot. to Dismiss at 34 (citing respective portions of individual defendants' affidavits).

state statute applies. *See* N.Y.Civ.Prac.L. & R. § 302 (McKinney 1990). Robinson's sole contention that the alleged torts occurred in the United States is predicated on a conversation between an office of AAFES in Dallas and OMSC's office in New York, citing Pl.'s Ex. K. Pl.'s Mem. of Law at 11. But that brief memorandum refers to a telephone conversation relating to OMSC's request that the army revoke Robinson's travel documents. It has absolutely nothing to do with the alleged wrongdoing of the individual defendants.

Furthermore, even if this Court could obtain personal jurisdiction over the individual defendants, the complaint would have to be dismissed for insufficiency of service of process. Robinson sent separate copies of the summons and complaint and two return of service acknowledgment forms via registered mail, return receipt requested to Deering, Potter and Mullins in separate envelopes addressed to Headquarters, Department of the Army, in Washington D.C. All three envelopes were returned to him as undeliverable. *See* Govt.'s Ex. G; Aff. of Amy Frisk, dated March 25, 1993, at ¶¶ 2, 3.

This attempted service of process was ineffective. In *Buggs v. Ehrnschwender*, 968 F.2d 1544, 1546 (2d Cir.1992), the court held that out-of-state residents cannot be served via first class mail as provided for in Fed.R.Civ.P. 4(c)(2)(C)(ii). Thus, Robinson must have sought to serve the individual defendants under Fed.R.Civ.P. 4(c)(2)(C)(i), which incorporates the service of process provisions of the state in which the district court sits. However, the purported service by mail was ineffective under New York law because section 312–a of the New York Civil Practice Law and Rules (McKinney 1990) requires that the summons and complaint be mailed via first-class mail, not registered mail. *See Buggs*, 968 F.2d at 1549 (service via certified mail is ineffective under New York law). Moreover, because each of the individual defendants never returned an acknowledgment of service form, Robinson was required to serve those defendants via the other methods outlined in Article 3 of the New York Civil Practice Law and Rules. *Id.* Therefore, Robinson's *Bivens* claim against

the individual defendants in their individual capacities is dismissed for lack of personal jurisdiction and, in the alternative, for insufficiency of service of process.

## CONCLUSION

For the foregoing reasons, OMSC's motion for summary judgment on the ADEA claim is granted and the federal defendants' motion to dismiss the complaint is granted.

SO ORDERED.